**Opinion issued April 11, 2013**



In The

# Court of Appeals

For The

# First District of Texas

————————————

NO. 01-11-00597-CR

NO. 01-11-00598-CR

———————————

**REMI CHIDI NWAOGU, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 176th District Court**
**Harris County, Texas**
**Trial Court Case No. 1285509 & 1285510**

---

**MEMORANDUM OPINION**

The trial court found appellant Remi Chidi Nwaogu guilty of the first-degree

felony offense of possession with intent to deliver cocaine weighing between 4 and

200 grams[1] and of the third-degree felony offense of unlawful possession of a firearm by a felon.[2] Finding an enhancement allegation in each indictment to be true, the trial court sentenced appellant to 25 years in prison for the possession-of-cocaine-with-intent-to-deliver offense and 18 years in prison for the possession-of-a-firearm-by-a-felon offense, with the sentences to run concurrently.

In each appeal, appellant raises two identical issues, contending (1) the evidence was not sufficient "to corroborate the testimony of a covert witness" and (2) the trial court unreasonably limited his right to cross-examine a State's witness. Appellant presents two additional issues in his appeal of the conviction for the offense of possession of a firearm by a felon. He asserts (1) the trial court erred by allowing the State to amend the indictment on the day of trial and (2) the evidence was insufficient to link him to the firearm.

We affirm the judgment of conviction in each appellate cause.

### Background

Relevant to this case, on November 12, 2010, a magistrate found probable cause to support the issuance of a search and arrest warrant. The search warrant was for the residence located at 11007 Great Hawk Lane, Houston, Texas. The

---

[1]    Trial court cause no. 1285509, appellate court cause no. 01–11–00597–CR; *see* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), 481.112(a), (d) (Vernon 2010).

[2]    Trial court cause no. 1285510, appellate court cause no. 01–11–00598–CR; *see* TEX. PENAL CODE ANN. § 46.04(a), (e) (Vernon 2011).

arrest warrant was for "a black male who is only known as 'Remmie,' more fully described as 25–30 years old, approximately 5'09" to 5'10" tall in height, weighing approximately 220 to 230 pounds, with a dark complexion and tattoos on both arms and both sides of his neck." The magistrate based his probable-cause determination on the affidavit of Officer R. Ybanez of the Houston Police Department's Narcotics Division.

In her affidavit, Officer Ybanez described the residence at 11007 Great Hawk Lane. She also attested that it was "controlled by" a black male known as "Remmie." The officer gave a physical description of Remmie matching the description set out in the arrest warrant.

Officer Ybanez recited that she had met with a confidential informant who "was checked and found not to be in possession of any type of controlled substance." She stated that the confidential informant was given "buy money" with which to purchase powder cocaine. The confidential informant went to 11007 Great Hawk Lane and purchased from Remmie a white powdery substance that the officer field tested to be cocaine. Officer Ybanez testified that she and her partner, Officer M. Ong, maintained surveillance of the residence. The confidential informant reported that Remmie told him "to come back that he sells all the time." Officer Ybanez also stated that the confidential informant had reported seeing a

firearm on the coffee table at the residence. Officer Ybanez signed the affidavit on the same date the magistrate issued the warrant.

Three days after its issuance, Officers Ybanez and Ong executed the warrant. Before entering the house, the officers saw appellant leave the residence in a white Acura. The officers stopped appellant and determined that he was the subject of the arrest warrant. The officers brought appellant back to the house to search the residence.

When they entered the residence, the officers found a woman, who they took into custody. The officers proceeded with the search. A K–9 unit was also part of the search team. The K–9 unit's dog alerted positively to a shoe box on the floor of the master bedroom closet. The shoebox contained 17 small plastic baggies containing what a laboratory later determined to be 5.9 grams of white powder cocaine and 5.3 grams of rock cocaine. Baggies containing 2.3 grams of methamphetamine were also found in the shoebox. A handgun was located in the drawer of the nightstand in the master bedroom.

Appellant was charged with the offense of possession with intent to deliver cocaine weighing between 4 and 200 grams and with the offense of unlawful possession of a firearm by a felon. In each case, appellant filed a motion to suppress the evidence obtained as a result of the search and arrest warrant. He asserted that the affidavit supporting the issuance of the warrant did not contain

sufficient facts to establish that probable cause existed for its issuance. Appellant also alleged that the information in the affidavit was false.

Appellant waived his right to a jury in both cases. The motions to suppress were carried with the trial on the merits. Among the State's witnesses were Officers Ybanez and Ong. They testified regarding the execution of the arrest and search warrant, including the officers' recovery of the narcotics from the bedroom closet and the handgun from the nightstand. The K-9 officer testified regarding the role he and his canine partner played in locating the narcotics. A criminologist from the crime lab also testified. She confirmed that the substances contained in the baggies recovered from the residence were tested and determined to be cocaine and methamphetamine.

Appellant testified solely for purposes of the motion to suppress. He denied selling cocaine to the confidential informant and denied knowledge of the handgun.

The State offered the arrest and search warrant "specifically and only for the purpose of the Motion to Suppress, not for the trial itself." The trial court admitted the warrant and affidavit "for the purposes of the suppression hearing."

The trial court denied appellant's motion to suppress in each case. The court also found appellant guilty of each charged offense. The trial court sentenced appellant to 25 years in prison for the offense of possession with intent to deliver

cocaine and to 18 years in prison for the offense of possession of a firearm by a felon. These appeals followed.

## Corroboration of Confidential Informant's Allegations

In his first issue, presented in each appeal, appellant asserts that there is insufficient evidence to corroborate the confidential informant's allegation that he purchased cocaine from appellant. Appellant relies on Code of Criminal Procedure article 38.141. The article provides that a person may not be convicted of an offense under Chapter 481 of the Health and Safety Code (Texas Controlled Substances Act) on the testimony of someone who is not a licensed peace officer or special investigator, but who is acting covertly for law enforcement, unless the person's testimony is corroborated by other evidence tending to connect the defendant to the offense. *See* TEX. CODE CRIM. PROC. ANN. art. 38.141(a) (Vernon 2005). The corroboration requirement is similar to the corroboration required of an accomplice witness. *See id.* art. 38.14 (Vernon 2005).

Appellant cites cases in which courts analyzed the sufficiency of the corroborating evidence under article 38.141. In the cited cases, the confidential informant, who had purchased illegal drugs from the defendant, actually testified at trial. *See, e.g.*, *Malone v. State*, 253 S.W.3d 253, 255 (Tex. Crim. App. 2008); *Jeffery v. State*, 169 S.W.3d 439, 446–48 (Tex. App.—Texarkana 2005, pet. ref'd); *Young v. State*, 95 S.W.3d 448, 449 (Tex. App.—Houston [1st Dist.] 2002, pet.

6

ref'd). The informant's testimony in each of those cases was offered to support an element of the charged offense.

Significantly, here, the confidential informant did not testify at trial. The confidential informant's allegations were used only to establish probable cause to support issuance of the warrant. This is a critical distinction between the instant cases and the cases cited by appellant. Unlike the cited cases, the controlled drug buy here was not used to prove an element of the charged offense in either case. Instead, the State prosecuted appellant for the cocaine and firearm found in his residence on execution of the search warrant. Appellant was not prosecuted for selling cocaine to the confidential informant. In addition, the record makes clear that Officer Ybanez's affidavit, containing the allegations regarding the confidential informant's purchase of cocaine from appellant, was admitted solely for purposes of evaluating the motion to suppress.

In short, there was no confidential informant testimony to corroborate. Thus, the requirements of article 38.141 have no application to the instant cases. *See* TEX. CODE CRIM. PROC. ANN. art. 38.141(a). We conclude that appellant's assertion that the State was required to offer corroborating evidence to support the confidential informant's allegations is without merit.

We overrule appellant's first issue in each appeal.

## Limitation of Cross–Examination

In his second issue raised in each appeal, appellant contends "an unreasonable restriction was placed on appellant when he was not allowed to properly cross-examine [Officer Ybanez]." During trial, appellant asked Officer Ybanez a number of questions regarding the details and circumstances related to the controlled drug buy made by the confidential informant. Appellant asserts that the trial court should have permitted him to ask Officer Ybanez about the following topics:

- Did the officer give money to the confidential informant to purchase the cocaine?

- Was a record made regarding the money?

- Was the money registered with the City of Houston as buy money?

- How much cocaine did the confidential informant obtain from appellant?

- Was the cocaine purchased by the confidential informant submitted to the crime lab for testing?

- Was paperwork filled out for the cocaine that the confidential informant brought from appellant's house?

- Was "destruction paper work" submitted for the cocaine which the confidential informant brought back from appellant's house?

- What shoes was the confidential informant wearing?

- Was the confidential informant wearing glasses?

- Was the confidential informant wearing anything on his head?

8

The State objected to these questions on relevance grounds. The trial court sustained the State's objections.

The trial court has broad discretion to impose reasonable limits on cross-examination to avoid harassment, prejudice, confusion of the issues, endangering the witness, and the injection of cumulative or collateral evidence. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). Pursuant to Rule of Evidence 611, which governs the interrogation and presentation of witnesses at trial, the trial court has reasonable discretion to control the mode and order of interrogating witnesses and presenting evidence, including whether to permit a witness to be cross-examined on a matter that is relevant to an issue. *See* TEX. R. EVID. 611(a), (b). Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Evidence that is not relevant is not admissible. TEX. R. EVID. 402.

Appellant contends that he "was convicted on the uncorroborated information" of the confidential informant. He asserts that he sought to question Officer Ybanez "to establish the theory of his case that the [confidential informant] was fabricating and never bought drugs from Appellant."

Contrary to appellant's assertions, the allegations made by the confidential informant regarding the controlled drug buy were not introduced at trial to prove any element of either the possession-of-cocaine-with-intent-to-deliver offense or the possession-of-a-firearm-by-a-felon offense. In meeting its burden of proof for each offense, the State relied on evidence related to the execution of the warrant and concomitant recovery of the cocaine and firearm from appellant's residence. The State did not rely on events related to obtaining the warrant. Thus, the disallowed questions were not relevant to the issue of guilt-innocence in either case. *See* TEX. R. EVID. 401. We hold that the trial court did not abuse its discretion when it sustained the State's objections, limiting appellant's cross-examination of Officer Ybanez.[3]

We overrule appellant's second issue in each appeal.

### Amendment of Indictment

Appellant presents a third and fourth issue in appellate cause number 01–11–00598–CR, which is his appeal of the conviction for the possession-of-a-firearm-by-a-felon offense. In his third issue, appellant contends that the trial court erred when it permitted the State to amend the indictment on the day of trial.

---

[3] As mentioned, appellant's motions to suppress were carried with the trial. Appellant offers no substantive argument or legal authority indicating that the limitation of cross-examination effected the presentation of his motions to suppress or how such evidence related to his motions to suppress.

The indictment originally read:

The duly organized Grand Jury of Harris County, Texas, presents in the District Court of Harris County, Texas, that in Harris County, Texas, REMI CHIDI NWAOGU, hereafter styled the defendant, heretofore on or about NOVEMBER 15, 2010, did then and there unlawfully, intentionally and knowingly possess a firearm after having been convicted of the felony offense of POSSESSION OF A CONTROLLED SUBSTANCE, in the District Court for the 179th Judicial District, HARRIS County, Texas, in Cause Number 1102604 on July 13, 2009, and said possession of the firearm occurred before the fifth anniversary of the Defendant's release from supervision under parole on MARCH 27, 2012.

At the start of trial, the following exchange occurred:

[Prosecutor]: The State is going to abandon some language as surplusage in the first paragraph. Specifically, the last five words of the first paragraph which are under parole on March 27, 2012. Period. So it would just simply end after the word supervision. Period.

THE COURT: All right.

. . . .

[Defense Counsel]: Objection.

THE COURT: What's the basis of your objection?

[Defense Counsel]: Judge, the case has been pending—set for trial today. The State made the choice as to what they wanted to charge Mr. Nwaogu with. They decided what they thought was the appropriate language. And that's what we've done. That's what we're carried forward here to hear and we're set for trial today. I think the State should be bound by what they charged Mr. Nwaogu with and what they presented to a Grand Jury.

THE COURT: Do you think that the date of his release from supervision on parole is a substantive element?

11

[Defense Counsel]: I think it obviously was important enough for the State to allege it in the indictment, Judge. A Grand Jury certainly took notice of that. I think the State should be bound by the proof in regards to that today.

THE COURT: All right. Your objection is overruled. Interlineate the indictment.

The record shows that, in the indictment, a line was drawn through the words "under parole on March 27, 2012" and a notation, "abandoned as surplusage," was added.

An amendment to the charging instrument is subject to the limitations and requirements set out in Code of Criminal Procedure article 28.10, which provides as follows:

> (a) After notice to the defendant, a matter of form or substance in an indictment or information may be amended at any time before the date the trial on the merits commences. On the request of the defendant, the court shall allow the defendant not less than 10 days, or a shorter period if requested by the defendant, to respond to the amended indictment or information.
>
> (b) A matter of form or substance in an indictment or information may also be amended after the trial on the merits commences if the defendant does not object.
>
> (c) An indictment or information may not be amended over the defendant's objection as to form or substance if the amended indictment or information charges the defendant with an additional or different offense or if the substantial rights of the defendant are prejudiced.

TEX. CODE CRIM. PROC. ANN. art. 28.10(c) (Vernon 2006).

12

The Court of Criminal Appeals has determined that an amendment to an indictment is a change that affects the substance of the indictment, while an abandonment, even if effected by a physical change in the indictment, does not affect its substance. *Eastep v. State*, 941 S.W.2d 130, 132–33 (Tex. Crim. App. 1997), *overruled on other grounds by Riney v. State*, 28 S.W.3d 561 (Tex. Crim. App. 2000). An alteration to the charging instrument that constitutes abandonment, rather than amendment of the instrument, does not invoke the requirements of article 28.10. *See id.* at 133.

The Court of Criminal Appeals has held that an abandonment of certain types of language in an indictment does not amount to an amendment: (1) abandonment of one or more alternative means of committing the alleged offense; (2) abandonment of an allegation if the effect is to reduce the prosecution to a lesser included offense; and (3) abandonment of surplusage. *See id.* at 133–35. Surplusage is unnecessary language not legally essential to constitute the offense alleged in the charging instrument. *Id.* at 134; *see also Curry v. State*, 30 S.W.3d 394, 399 (Tex. Crim. App. 2000).

To prove unlawful possession of a firearm by a felon, the State is required to prove that the person (1) possessed a firearm (2) "after conviction and before the fifth anniversary of the person's release from confinement following conviction of the felony or the person's release from supervision under community supervision,

13

parole, or mandatory supervision, whichever date is later." TEX. PENAL CODE ANN. § 46.04(a)(1). The indictment in this case originally alleged appellant "intentionally and knowingly possessed a firearm after having been convicted of the felony offense of Possession Of A Controlled Substance, . . . on July 13, 2009, and said possession of the firearm occurred before the fifth anniversary of the Defendant's release from supervision *under parole on March 27, 2012*." (emphasis added.)

Inclusion of the date on which appellant was released from parole was unnecessary because the State was only required to allege the elements of the offense. *See Fuller v. State*, 73 S.W.3d 250, 253 (Tex. Crim. App. 2002) (holding that, because victim's name was not an element of the offense, it did not have to be alleged in indictment). Because the phrase "under parole on March 27, 2012" did not furnish language legally necessary to constitute the offense of possession of a firearm by a felon, we conclude that it was surplusage. Thus, the alteration to the indictment constituted an abandonment and not an amendment. We hold that the trial court did not err by granting the State's motion to strike the phrase "under parole on March 27, 2012."

We overrule appellant's third issue in appellate cause number 01–11–00598–CR.

## Sufficiency of the Evidence

In his fourth issue, appellant contends that the evidence was insufficient to link or connect him to the handgun found in the nightstand in the master bedroom.

### A.     Standard of Review

This Court reviews sufficiency-of-the-evidence challenges applying the same standard of review, regardless of whether an appellant presents the challenge as a legal or a factual sufficiency challenge. *See Ervin v. State*, 331 S.W.3d 49, 53–55 (Tex. App.—Houston [1st Dist.] 2010, pet. ref'd) (construing majority holding of *Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *See id*. Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively

establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 n.11, 320, 99 S. Ct. at 2786, 2789 n.11, 2789; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793.

In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

## B. Possession of a Firearm

"To establish unlawful possession of a firearm by a felon, the State must show that the accused was previously convicted of a felony offense and possessed

a firearm after the conviction and before the fifth anniversary of his release from confinement or from community supervision, parole, or mandatory supervision, whichever date is later." *James v. State*, 264 S.W.3d 215, 218 (Tex. App.—Houston [1st Dist.] 2008, pet. ref'd); *see* TEX. PENAL CODE ANN. § 46.04(a)(1). "Possession is a voluntary act if the possessor knowingly obtains or receives the thing possessed or is aware of his control of the thing for a sufficient time to permit him to terminate his control." *James*, 264 S.W.3d at 218; *see* TEX. PENAL CODE ANN. § 6.01(b) (Vernon 2011).

"If the firearm is not found on the defendant or is not in his exclusive possession, the evidence must affirmatively link him to the firearm." *James*, 264 S.W.3d at 218–19. The State may establish possession by proving links which demonstrate that the defendant "was conscious of his connection with the weapon and knew what it was." *Id*. at 219. This rule protects the innocent bystander—such as a relative, friend, or even stranger to the actual possessor—from conviction merely because of his fortuitous proximity to a firearm belonging to someone else. *Jones v. State*, 338 S.W.3d 725, 742 (Tex. App.—Houston [1st Dist.] 2011), *aff'd*, 364 S.W.3d 854 (Tex. Crim. App. 2012).

A nonexclusive list of factors that may establish a link between a defendant and firearms found inside a house which was not in the defendant's exclusive control includes whether: (1) the defendant was present at the time of the search;

17

(2) the defendant was the owner of or had the right to control the location where the firearm was found; (3) the firearm was in plain view; (4) the defendant was in close proximity to and had access to the firearm; (5) firearms or other contraband was found on the defendant; (6) the defendant attempted to flee; (7) conduct by the defendant indicated a consciousness of guilt, including extreme nervousness or furtive gestures; (8) the defendant had a special connection or relationship to the firearm; (9) the place where the firearm was found was enclosed; and (10) affirmative statements connected the defendant to the firearm, including incriminating statements made by the defendant when arrested. *Id.* (citing *Williams v. State*, 313 S.W.3d 393, 397–98 (Tex. App.—Houston [1st Dist.] 2009, pet. ref'd); *James*, 264 S.W.3d at 219; *Evans v. State*, 202 S.W.3d 158, 162 & n.12 (Tex. Crim. App. 2006)).

The link between the defendant and the contraband need not be so strong that it excludes every other outstanding reasonable hypothesis except the defendant's guilt. *Brown v. State*, 911 S.W.2d 744, 747 (Tex. Crim. App. 1995). No formula of facts exists to dictate a finding of links sufficient to support an inference of knowing possession. *See Taylor v. State*, 106 S.W.3d 827, 831 (Tex. App.—Dallas 2003, no pet.). In sum, it is not the number of links that supports a fact finder's verdict, rather, it is the logical force of the evidence, direct and

circumstantial, which is dispositive. *See Jones*, 338 S.W.3d at 742; *see also Evans*, 202 S.W.3d at 166.

## C.  Analysis

To support his challenge that insufficient evidence was presented to link him to the recovered handgun, appellant points out that he shared the residence with the woman who was at the residence when the police executed the search warrant. The evidence showed that the master bedroom was shared by a male and a female. The dresser on the left side of the bedroom contained female clothing. The nightstand, from which the handgun was recovered, contained no items directly linking appellant to the handgun. Sitting on top of the nightstand was a bottle of lotion, a Hello Kitty doll, and an alarm clock.

Appellant also points out that the State presented no evidence regarding a number of the link factors. Appellant relies on evidence indicating that the firearm was not in plain view nor was it in close proximity to him when he was arrested. The evidence showed that the police had not tested the firearm for fingerprints. In addition, appellant did not attempt to flee nor did he make any incriminating statements indicating that the firearm belonged to him.

Generally, appellant accurately cites the record. Nonetheless, appellant's analysis does not appropriately view the evidence in the light most favorable to the verdict and improperly discounts evidence linking him to the handgun recovered

from the nightstand. In addition, the absence of various affirmative links does not constitute evidence of innocence to be weighed against the affirmative links that are present. *James*, 264 S.W.3d at 219. A factor that is of little or no value in one case may be the turning point in another. *See Nhem v. State*, 129 S.W.3d 696, 699 (Tex. App.—Houston [1st Dist.] 2004, no pet.). When determining whether the defendant knew that he possessed contraband, the fact finder is allowed to infer the defendant's knowledge from his acts, conduct, remarks, and from the surrounding circumstances. *See Krause v. State*, 243 S.W.3d 95, 111 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd).

Here, the State offered evidence linking appellant to the firearm. The undisputed evidence showed that appellant lived at the residence. The State introduced into evidence mail addressed to appellant at the residence and a one-year lease agreement for the residence signed by appellant.

Immediately before the warrant was executed, appellant was seen leaving the residence. The house had surveillance cameras mounted on the exterior. Officer Ong testified that, in his experience, he has seen, many times, surveillance cameras set up at houses that "sold dope." In the kitchen of the house, the officers found a substance known as "cut," which, according to Officer Ybanez, is "a substance that is usually added to cocaine to expand the volume of it for various reasons."

The police found cocaine and methamphetamine in a shoebox in the master bedroom closet. The cocaine and methamphetamine were packaged in small plastic baggies. The master bedroom closet, in which the drugs were found, contained only men's clothing and shoes; no women's clothing were found in the closet. A number of shoeboxes were also in the closet. All of the boxes were for men's shoes, including the shoebox containing the illegal drugs.

While the dresser on the left side of the master bedroom contained women's clothing, the chest of drawers on the right side contained men's clothing. The handgun was recovered from the drawer of the nightstand on the right side of the bed. The gun was loaded with live rounds.

Officer Ong testified that, in his opinion, the purpose of the firearm recovered from the master bedroom was to protect the drug trafficking taking place. He formed this opinion based on the gun's close proximity to the narcotics stash. He explained that, in his training and experience, drug dealers often keep weapons to close to their narcotics.

The circumstantial evidence outlined above, when viewed in combination, constitutes sufficient evidence connecting appellant to the actual care, custody, control or management of the firearm such that a jury could have reasonably inferred that appellant knowingly possessed it. *See Evans*, 202 S.W.3d at 166. Although appellant cites link factors on which the State presented no evidence, as

well as evidence that weighs in his favor, "[i]t is the logical force of the circumstantial evidence, not the number of links, that supports a jury's verdict." *See id.*

Viewing the evidence in a light most favorable to the verdict, we conclude that a rational fact finder could have found beyond a reasonable doubt that appellant knowingly possessed the firearm. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Jones*, 338 S.W.3d at 743. We hold that the evidence is sufficient to support the judgment of conviction for the offense of possession of a firearm by a felon.

We overrule appellant's fourth issue in appellate cause number 01–11–00598–CR.

## Conclusion

We affirm the judgment of conviction in appellate cause number 01–11–00597–CR and in appellate cause number 01–11–00598–CR.

Laura Carter Higley
Justice

Panel consists of Chief Justice Radack and Justices Higley and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).