

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NOS. PD-0674 / 0675 / 0676-11

### RIO SHAREESE JONES, Appellant

### v.

### THE STATE OF TEXAS

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE FIRST COURT OF APPEALS
### GALVESTON COUNTY

KELLER, P.J., delivered the opinion of the Court in which PRICE, KEASLER, HERVEY and COCHRAN, JJ., joined. PRICE, J., filed a concurring opinion in which WOMACK, J., joined. MEYERS, J., filed a dissenting opinion. JOHNSON, J., dissented. ALCALA, J., did not participate.

The search-warrant affidavit in this case was imprecise as to the timing of the events it described. We hold that the affidavit nevertheless sufficiently supported the issuance of the search warrant, primarily because it suggested a continuing criminal operation. We shall affirm the judgment of the court of appeals.

# I. BACKGROUND

At 12:24 a.m. on November 6, 2007, Officer Allen Bjerke of the Texas City Police Department Special Crimes Unit obtained a warrant from a magistrate to search appellant's residence. The warrant was supported by a five-page affidavit that was also dated November 6, 2007. The affidavit included the following statements relating to the timing and sequence of the events described:

> Affiant recently received information from a confidential informant in reference to crack cocaine being sold out of the residence located at 219 North Pine Road.

> * * *

> After obtaining the information about 219 North Pine Road Affiant began a narcotics investigation.

> * * *

> Officer C. Alcocer recalled being contacted by Dickinson Police Officer M. Henson, in reference to information about 219 North Pine Road. Officer Alcocer stated to Affiant that Officer Henson had information from a confidential informant about the selling of crack cocaine at 219 North Pine Road. Officer Alcocer contacted Officer Henson and arranged a meeting with the confidential informant, hereafter referred to as the "source."

> * * *

> [D]uring the interview the source co[rrobo]rated information about 219 North Pine Road that Affiant had previously received from other confidential informants that are documented with the Texas City Special Crimes Unit.

> * * *

> Affiant arranged to make a narcotics buy from the suspect location, 219 North Pine Road, with the assistance of the source. [Subsequent paragraphs described a controlled buy using the confidential informant, and the source returning with an "off-white colored rock substance."]

> * * *

Your Affiant field tested the rock and the rock tested positive for the presence of cocaine.

* * *

The rock was turned over to the Texas City Identification Division by Affiant for storage as a controlled buy.  Based on the information provided to Affiant by the source and other confidential informants, and my own independent investigation, Affiant believes that a violation of the Texas Controlled Substances Act is currently taking place at 219 North Pine Road.

* * *

Affiant requests authorization to enter the suspected place and premises without first knocking and announcing the presence and purpose of officers executing the warrant.

* * *

Affiant believes that Jones has shown a tendency to resist and evade arrest, due to past arrest for both evading arrest and resisting arrest in 2005 and 2007.

Pursuant to the warrant, the police searched appellant's residence and found cocaine, codeine in cough syrup, ecstasy tablets, and various items that could be associated with drug trafficking.

In a motion to suppress the results of the search, appellant alleged that the supporting affidavit "fails to show that the act or event upon which probable cause is based occurred within a reasonable time prior to making the affidavit."  The trial judge denied the motion.  After a jury trial, appellant was convicted of three different offenses[1] and sentenced to ninety-nine years in prison.

Appellant raised his suppression claim again on appeal.  Although the court of appeals said that the affidavit was "not a model," it nevertheless concluded that the lack of a specific date or time

---

[1]  The offenses were possession of firearm by a felon, possession with intent to deliver cocaine weighing more than four grams but less than 200 grams, and possession with intent to deliver methylenedioxy methamphetamine (ecstasy) weighing more than four grams but less than 400 grams.

was not fatal to the magistrate's finding of probable cause.[2] The court of appeals found that the continuing nature of the criminal activity diminished the importance of establishing a specific and immediate time period in the affidavit.[3] The court also observed that use of the word "recently" was upheld as sufficient by this Court in *Sutton v. State*,[4] a pre-*Gates*[5] case.[6] The court of appeals held that "the temporal references within the affidavit allowed the magistrate to determine there was a substantial basis for concluding that a search would uncover evidence of wrongdoing."[7] It reached this conclusion "because the affidavit adequately suggested a continuing criminal operation, including 'recently' obtained information from the first confidential informant, from the affiant's own investigation, and from the second confidential informant who made the controlled buy."[8]

## II. ANALYSIS

### A. General Principles

The Fourth Amendment[9] establishes a constitutional preference that a search be conducted

---

[2] *Jones v. State*, 338 S.W.3d 725, 736-38 (Tex. App.–Houston [1st Dist.] 2011) (opinion on rehearing).

[3] *Id.* at 736-37.

[4] 419 S.W.2d 857 (Tex. Crim. App. 1967).

[5] *Illinois v. Gates*, 462 U.S. 213 (1983).

[6] *Jones*, 338 S.W.3d at 737.

[7] *Id.* at 738.

[8] *Id.* Justice Sharp dissented from the court-of-appeals panel's holding. *Id.* at 744-49 (Sharp, J., dissenting). Justice Jennings, who was not on the panel, dissented to the denial of en banc reconsideration. *Id.* at 744 (Jennings, J., dissenting).

[9] "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be

pursuant to a warrant.[10]  Ordinarily, the warrant process involves the presentation to a neutral and detached magistrate of an affidavit that establishes probable cause to conduct a search.[11]  Although a reviewing court may look only to the four corners of the supporting affidavit, the reviewing court should view the magistrate's decision to issue the warrant with great deference.[12]  After reviewing the supporting affidavit in "a commonsensical and realistic manner," a reviewing court must uphold the magistrate's decision so long as the magistrate had a substantial basis for concluding that probable cause existed.[13]  Although the reviewing court is not a "rubber stamp," "the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon *de novo* review."[14]

## B. Can *Sutton* Be Distinguished?

In *Sutton*, a warrant was executed to search the defendant's apartment.[15]  With respect to time, the supporting affidavit stated the following:

> [Affiants] do solemnly swear that heretofore, on or about the 6th day of February, A.D., 1966, * * * [the defendant] did then and there unlawfully possess a narcotic drug, to-wit: Marihuana, * * * that said narcotic drugs are now concealed by [the defendant]. * * * I have been informed of the existence of the foregoing set out facts

---

searched, and the persons or things to be seized."  U.S. CONST., Amend. 4.

[10]  *Gates*, 462 U.S. at 236; *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011).

[11]  *See Gibbs v. State*, 819 S.W.2d 821, 830 (Tex. Crim. App. 1991).

[12]  *McLain*, 337 S.W.3d at 271.

[13]  *Id.  See also Gates*, 462 U.S. at 238, 241.

[14]  *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010) (quoting from W. LaFave, SEARCH AND SEIZURE: A TREATISE ON THE FOURTH AMENDMENT § 11.7(c) at 452 (4th ed. 2004 & Supp. 2009-2010)).

[15]  419 S.W.2d at 860.

by reliable, credible and trustworthy citizen of Dallas, Dallas County, Texas, Recently (x) and further (x). The affiants have recently received information from a confidential informant that Robert Earl Sutton [the defendant] and L. K. Miller are living at 6914 Snider Plaza and that they have a large quantity of marihuana in their possession at this location. The informant has been to these living quarters and has seen the marihuana recently. The affiants have had these living quarters under surveillance and have observed known users of marihuana going to and from the location. The informant has given the affiants information in the past on numerous occasions and the information has always been true and correct. * * * The affiants have received information prior to this time about Sutton and Miller being involved in the illicit narcotic traffic.[16]

This Court held that the "word 'recently[,]' as used with the other references to time in stating the facts as shown in the affidavit," led to "the conclusion that the act or event relied upon as a basis for probable cause occurred within a reasonable time before the making of the affidavit."[17] The other references to time included the statement that the defendant "did then and there unlawfully possess a narcotic drug, to wit: Marihuana" and the statement that "said narcotic drugs are *now* concealed by" the defendant.[18]

Appellant first attempts to distinguish *Sutton* by contending that the affidavit in that case used the term "recently" twice, and that it was this second use of the word "recently" that sufficiently narrowed the time frame for determining probable cause. By contrast, appellant contends, the affidavit in the present case used "recently" only once, to describe when information was initially conveyed about the possible use of appellant's residence for the sale of drugs. Appellant views the controlled buy as the second and more crucial piece of information relating to probable cause, and he claims that "the affidavit does not provide a time reference" for the controlled buy "other than it

---

[16] *Id.* at 860-61.

[17] *Id.* at 861.

[18] *Id.* (emphasis in *Sutton*).

occurred after the relay of [the initial] information."

A review of the affidavit in *Sutton* shows that the affiants "recently received information from a confidential informant" and that the confidential informant had "seen the marihuana recently." Both were necessary for the magistrate to conclude that the evidence was observed recently. The informant had to say that he had recently observed the evidence, and the law-enforcement agent seeking the warrant had to say that the informant had recently told him so.

The present case is not distinguishable from *Sutton* in this respect. In this case, there were (at least) two confidential informants. Officer Bjerke stated that he had "recently" received information from the first confidential informant. Nothing is known about when the first confidential informant observed the events that were the basis of his communications. But after "recently" receiving this information, Officer Bjerke used a second confidential informant to conduct a controlled buy. This controlled buy was even more "recent" because the affidavit depicts the controlled buy as occurring "after" the receipt of information.[19]

The greater recency of the controlled buy actually compares favorably (from a magistrate's perspective) to *Sutton*. In *Sutton*, the crucial probable-cause evidence was seen by the confidential informant *before* law enforcement's "recent" acquisition of information. But in the present case, the controlled buy happened *after* law enforcement's "recent" acquisition of information.

Appellant next attempts to distinguish *Sutton* by saying that *Sutton* contained "a statement of fact" that "drugs are now concealed" by the defendant, while this case simply contained a conclusory assertion that the officer believed that a violation of the controlled substances act is

---

[19] If the information from the first confidential informant had been the sole basis of the warrant, this case would be distinguishable from *Sutton* in the way that appellant suggests. But the inescapable fact is that in this case there was, later, a second informant and a controlled buy.

"currently" taking place inside appellant's residence. We perceive no material difference between the two statements. The statement in *Sutton* was the affiant's conclusion that drugs "are now" on the premises. The affiant did not say that he saw the drugs. Instead, he said that he was "informed of the existence of the foregoing set out facts by reliable, credible and trustworthy citizen." The affiant then detailed the information received from the confidential informant. We think the *Sutton* court simply considered the affiant's belief that drugs "are now" on the premises in construing what a magistrate could reasonably believe the word "recently" meant. The present case also contains an affiant's expression of belief that drugs are now ("currently") on the premises.

Finally, appellant relies upon *Davis v. State*[20] to support his argument that this case and *Sutton* are distinguishable. We ultimately upheld the warrant in *Davis* because an officer's statement that he smelled a strong chemical odor of methamphetamine emanating from a certain location on a certain date was sufficient to supply the magistrate with probable cause.[21] It appears that appellant relies upon that case because we said that, absent the "smell" statement, the affidavit would be insufficient.[22] But in *Davis*, the affidavit contained no information relative to time other than that describing the chemical odor—not even the use of the word "recently." There was simply nothing else in that affidavit to suggest that any of the events described were recent. *Davis* is distinguishable

---

[20] 202 S.W.3d 149 (Tex. Crim. App. 2006).

[21] *Id.* at 155-58.

[22] *Id.* at 155 ("[W]e agree with the court of appeal[s]'s holding, and the State's concession, that the affidavit's background information was, by itself, insufficient to support the issuance of a warrant. None of the background information gives a time frame that would corroborate the existence of methamphetamine on the premises when the warrant was requested. Aside from Officer Westervelt's assertion that he smelled a chemical odor at a specific time and place, the level of specificity of the affidavit as to time and place failed to support the search warrant.").

from both *Sutton* and the present case and is of little value in resolving the issue before us.

We also observe that, contrary to appellant's contentions, the affidavit in the present case does contain facts that seem to set a definite outer time limit for when the events could have taken place. In the affidavit, Officer Bjerke supported his request to enter the premises without knocking or announcing his presence by stating that appellant had previously been arrested "for both evading arrest and resisting arrest in 2005 and 2007." The magistrate could reasonably conclude from reading the entire affidavit that both of these arrests preceded the initial "recent" acquisition of information from the first confidential informant. At the very least, then, the affidavit indicates that the events related by Officer Bjerke occurred during 2007.

So there are two significant differences between the present case and *Sutton*. First, in this case, the crucial evidence upon which probable cause was based was obtained *after* law enforcement's "recent" acquisition of information, while in *Sutton*, the crucial evidence was obtained *before* (but recent to) law enforcement's "recent" acquisition of information. Second, the affidavit in this case set an outer time limit for when the events must have occurred, which was not the case for the affidavit in *Sutton*. Both of these differences lend further support for upholding the magistrate's determination to issue the warrant in this case.

### C. Should the Warrant Be Held Invalid Anyway?

Appellant does not explicitly state that *Sutton* has been abrogated by more recent cases or that *Sutton* should be overruled, but appellant makes a number of disparaging comments regarding that case. He contends that the court of appeals in the present case has issued "a published apologia" by "relying on a case of almost nonexistent precedential value that finds the use of the term 'recently' to be a panacea that cured an otherwise fatal gap in the affidavit as to when probable cause reached

critical mass." Appellant further characterizes *Sutton* as "a dead letter anachronism that, based upon its contrasting facts, actually undermines" the court of appeals's arguments. And appellant says that *Sutton* is "a pre-*Gates*, pre-*Schmidt*, pre-*Davis* Texas case" that "cannot support the great weight rested upon it" because of factors appellant believes makes *Sutton* distinguishable. Finally, appellant remarks that "*Gates*, *Schmidt*, *Davis* and their progeny have sucked the life out of *Sutton* like a deer tick on a border collie."

It is not clear why appellant believes that *Sutton* is a "dead letter anachronism" or why he concludes that more recent cases have rendered *Sutton* irrelevant. How *Gates* might call *Sutton* into question is not apparent, and it is difficult to see what precedent *Gates* would have changed that would render *Sutton* an anachronism. In *Gates*, the Supreme Court ultimately upheld the validity of the search warrant.[23] The Supreme Court made it *easier* to uphold a magistrate's decision by abandoning the restrictive *Aguilar-Spinelli* doctrine in favor of a totality-of-the-circumstances test.[24] What we think appellant finds significant about *Gates* is its statement that "the wholly conclusory statement at issue in *Nathanson* failed to meet" the probable-cause requirement for issuing a warrant.[25] But this statement was merely a reaffirmation of *Nathanson*, which was decided long before our opinion in *Sutton*.[26] Moreover, the statement in *Nathanson* that was held to be too conclusory was that the affiant "has cause to suspect and does believe" that contraband existed at a

---

[23] 462 U.S. at 246.

[24] *Id.* at 238. *See also Aguilar v. Texas*, 378 U.S. 108 (1964); *Spinelli v. United States*, 393 U.S. 410 (1969).

[25] *Gates*, 462 U.S. at 239.

[26] *See Nathanson v. United States*, 290 U.S. 41 (1933).

certain location. The affidavit in the present case is simply not comparable to the affidavit in *Nathanson*.

The other two cases relied upon by appellant are distinguishable from *Sutton*, as well as from the present case. We have already discussed *Davis*: Absent the "smell" paragraph, the affidavit contained no reference to time at all—not even the word "recently." In *Schmidt*, the only reference to time in the affidavit was that the defendant "is presently under medical attention" after being "found" in an automobile.[27] The affidavit stated that an ambulance was called, that Tim Bell and Myra Stephens responded, and that the defendant told Bell that he (the defendant) had been sniffing cocaine since he left Florida to stay awake.[28] The affidavit did not say when the affiant received this information from Bell, when Bell obtained the information, or how long the defendant had been under medical attention.[29] There was not even an allegation that the affiant or Bell had received his information recently.[30] And the place to be searched was an automobile,[31] a location in which drugs are more likely to be transient than in a home.[32]

We have suggested that time is a less important consideration when an affidavit recites observations that are consistent with ongoing drug activity at a defendant's residence.[33] We quoted

---

[27] *Schmidt v. State*, 659 S.W.2d 420, 421 (Tex. Crim. App. 1983).

[28] *Id.* at 420.

[29] *Id.* at 421.

[30] *See id.* at 420.

[31] *See id.*

[32] *See* this opinion, *post*.

[33] *McLain*, 337 S.W.3d at 273-74 (noting observations consistent with ongoing drug activity and quoting from *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972)).

from *United States v. Johnson*, in which the Tenth Circuit explained: "Where the affidavit recites a mere isolated violation it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time.  However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant."[34]  Other federal circuits have held that the nature of the activity must be considered, and that, in appropriate circumstances, years could pass without information becoming stale.[35]  In *United States v. Greene*, the Sixth Circuit explained that "[e]vidence of ongoing criminal activity will generally defeat a claim of staleness."[36]  And, according to that court, "where the criminal activity occurred in a 'secure operational base,' the passage of time becomes less significant."[37]

*Greene* was a case in which drugs were being sold out of a residence.[38]  Narcotics had been purchased at the residence at least twelve times, but the last reported time was twenty-three months before a warrant was sought.[39]  The Sixth Circuit found that the information was not stale.[40]  The Sixth Circuit has subsequently suggested that information about narcotics tends to go stale quickly

---

[34]  *Johnson*, 461 F.2d at 287.

[35]  *United States v. Doyle*, 650 F.3d 460, 474 (4th Cir. 2011) (child pornography); *United States v. Allen*, 625 F.3d 830, 843 (5th Cir. 2010) (same); *United States v. Abboud*, 438 F.3d 554, 572-73 (6th Cir. 2006) (bank fraud); *United States v. Hicks*, 650 F.3d 1058, 1068 (7th Cir. 2011) (discussing weapons and bank robberies).

[36]  250 F.3d 471, 481 (6th Cir. 2001); *see also Abboud*, 438 F.3d at 573 (quoting *Greene*).

[37]  *Greene*, 250 F.3d at 481 .

[38]  *Id.*

[39]  *Id.*

[40]  *Id.*

but only "in the absence of information indicating an ongoing and continuing narcotics operation."[41]

Appellant contends that the issue is not staleness but specificity, and he faults the court of appeals for "confusing and conflating" what he sees as "two related—but distinct—legal concepts." As with the defendant in the Fourth Circuit case of *Doyle*, appellant's "argument is not that *too much* time elapsed, but instead that there is insufficient evidence presented to the magistrate to determine *how much* time elapsed."[42] But imprecision with respect to time is not by itself fatal; it becomes fatal when a court cannot ascertain whether or not the information is stale.[43]

In *United States v. Hython*, the Sixth Circuit found a search warrant to be stale in a case sharing some superficial similarities with our case but also presenting some important differences.[44] The probable-cause affidavit in *Hython* specified that officers had received information from a confidential informant that he had bought crack cocaine from a woman in Toronto.[45] The woman had in turn told the informant that she obtained the drugs from a person in Steubenville.[46] Officers sent the informant to make a controlled buy from the woman at her Toronto address. After receiving

---

[41] *United States v. Frechette*, 583 F.3d 374, 378 (6th Cir. 2009) (quoting from *United States v. Kennedy*, 427 F.3d 1136, 1142 (8th Cir. 2005)).

[42] *See Doyle*, 650 F.3d at 475 (emphasis in *Doyle*).

[43] *See id.* ("While in the context of child pornography substantial amounts of time can elapse before probable cause to search for child pornography becomes 'stale,' there is no support for the contention that once probable cause exists to search for child pornography, it remains valid *ad infinitum*. As such, we conclude that even if the affidavit established probable cause, it was completely devoid of indicia that the probable cause was not stale.").

[44] 443 F.3d 480, 485-87 (6th Cir. 2006).

[45] *Id.* at 482.

[46] *Id.*

funds from the informant, the woman traveled to Steubenville, went inside the Steubenville residence for two minutes, and then drove back to Toronto, where she provided the informant with a baggie of crack cocaine.[47] The affidavit did not specify when the officers first received their information or when the controlled buy took place; the affidavit did not even say that these events occurred "recently."[48]

The Sixth Circuit concluded that the affidavit did not establish that the residence was a "secure operational base for an ongoing drug enterprise."[49] As in the present case, there was only one controlled buy, but unlike in the present case, the controlled buy involved an intermediary, traveling to another town, which "not only call[ed] into question the degree of control involved in this 'controlled buy,' but . . . also militate[d] against the conclusion that the premises . . . constituted an established and notorious drug den."[50] "More importantly," the affidavit in *Hython* offered "no clue as to when this single controlled buy took place."[51] The lack of any time reference whatsoever in the *Hython* affidavit is a critical distinction between that case and this case.

As we have explained, the affidavit in the present case permitted the magistrate to infer a definite outer limit for when the events giving rise to probable cause took place: the events must

---

[47] *Id.* at 483.

[48] *See id.* at 482-83.

[49] *Id.* at 486.

[50] *See id.* And the court observed that the "single transaction is not supported by any further police investigation - the affidavit includes no observation of deliveries to the address, no monitoring of the frequency or volume of visitors to the house, no second controlled buy, no further surveillance whatsoever." *Id.*

[51] *Id.*

have happened sometime in 2007, a maximum of a little over ten months before the issuance of the warrant. The controlled buy, combined with the previous information from at least two informants that drugs were being sold from the address, was sufficient to establish probable cause that a continuing drug business was being operated from the residence, a secure operational base. If twenty-three months could elapse before securing a warrant for the residential drug operation in *Greene* without causing the information to become stale, it seems unlikely that a gap of ten months should pose a staleness problem in the present case.

In any event, we think the magistrate could infer that the controlled buy had occurred much more recently than ten months ago. The affidavit did not refer to appellant's evading and resisting arrest incidents as "recent." It referred to them as "past." The magistrate could reasonably infer from the affidavit that the "recent" acquisition of information about drug selling was far closer in time to the warrant process than the "past" evading or resisting arrest incident that occurred sometime in 2007.[52] Moreover, Officer Bjerke did express his opinion that the residence was "currently" being used to sell drugs. Although that opinion, by itself, would be too conclusory to support the issuance of a search warrant, the magistrate could, as was the case in *Sutton*, consider that statement of opinion in construing what the officer meant by the word "recently" in the affidavit. Finally, we observe that, unlike in *Sutton*, the controlled buy—the linchpin of probable cause in this case—was even more recent than the information that the affiant cited as "recently" acquired.

We conclude that the courts below did not err in determining that the affidavit provided

---

[52] Furthermore, the idea that months or even days had elapsed seems inconsistent with the fact that the warrant was sought shortly after midnight. Although it is possible that the officer sought a warrant at that time for some other reason, the most likely explanation is that the lateness of the hour reflects that the officer's effort to get a warrant occurred very shortly after the controlled buy had taken place.

adequate information regarding the timing of the events giving rise to probable cause to support the issuance of the warrant. The judgment of the court of appeals is affirmed.

Delivered: March 28, 2012
Publish