

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-0605-14

**THE STATE OF TEXAS**

**v.**

**CUONG PHU LE, Appellee**

---

**ON STATE'S PETITION FOR DISCRETIONARY REVIEW
FROM THE FOURTEENTH COURT OF APPEALS
HARRIS COUNTY**

---

**ALCALA, J., filed a dissenting opinion.**

### DISSENTING OPINION

Because there is a gap of about twelve days between almost all of the activities described in the probable-cause affidavit and the issuance of the search warrant and because the warrant fails to show probable cause for an ongoing indoor marijuana-grow operation, I would uphold the judgments of both the trial court and the court of appeals that the search warrant was issued without probable cause based on stale information. Although I recognize that what would otherwise be stale information may support a warrant if it shows probable

cause for an ongoing criminal activity, I conclude that the facts in the affidavit, when viewed in their totality, fail to show that type of probable cause. More particularly, unlike the majority opinion that largely paraphrases the affidavit to characterize the facts as being more favorable to the State than they are, I specifically quote the pertinent portions of the affidavit and consider the precise facts that were presented to the magistrate. Furthermore, although I note that this search may have been upheld had the State argued that the good-faith exception applicable to search warrants should apply, the State forfeited that argument by failing to present it to the trial court. I agree with both the trial court and the court of appeals that the evidence should be suppressed because the search warrant is unsupported by probable cause. I, therefore, respectfully dissent from the Court's judgment reversing the judgment of the court of appeals.

## I. There are Six Significant Problems with the Search Warrant

There are six significant problems that occurred here: (1) dog-sniff evidence was used as probable cause for this warrant, but the Supreme Court has now disallowed that type of evidence in the manner that it was obtained in this case; (2) the officer's expert opinion about the citizen's tip is unsupported by the facts; (3) the officer's general statements about high electricity usage being indicative of a marijuana growing operation are immaterial to this case; (4) the officer's general statements about the significance of supplemental air conditioning are immaterial to this case; (5) the vast majority of the information used to sustain the warrant was stale information obtained about two weeks before the search warrant

was obtained; and (6) there is inadequate information from which to infer that this was an ongoing marijuana growing operation. Taking these six problems with the search warrant into consideration, the totality of the facts fail to establish probable cause for this search.

First, as this Court's majority opinion accurately observes, the dog-sniff evidence used as part of the probable cause to support this warrant may no longer be considered under *Florida v. Jardines*, 133 S. Ct. 1409, 1417-18 (2013). The judge who signed the search warrant did so under the belief that the dog had alerted to the smell of narcotics at the residence shortly before the warrant was issued, but, because the dog-sniff evidence was obtained through an unlawful warrantless search, this Court may not consider that evidence in determining whether there was probable cause to support the search warrant. *See id*. Without the dog-sniff evidence, the only fact that occurred shortly before the warrant was obtained was the smell of raw marijuana on appellee and in his car after he visited the house, and, as I explain further below, that fact fails to establish probable cause that officers would find raw marijuana inside the house.

Second, the officer's expert opinion about the citizen's tip is unsupported by the facts, and, therefore, that opinion must be disregarded. The concerned citizen indicated that he or she knew the owner of the residence, who rented it to an unknown person, and that ever since the property was rented, the citizen had seen "suspicious activity" in the form of young Asian males visiting the residence in the evening for short periods without turning on the lights and without residing at the location. The warrant states,

> The current occupants, who are described as young Asian males[,] started arriving at the residence several months ago. The [concerned citizen] never observed any type of furniture being moved into the residence. The [concerned citizen] reported that the Asian males arrive at the residence during the early evening hours. These individuals remain at the residence for a short period of time before departing. These individuals do not appear to reside at the residence and do not engage in normal house hold [sic] activities, i.e. yard work, washing cars, etc. The [concerned citizen] described one of the vehicles being driven by the Asian males as a black Toyota SUV . . . . The [concerned citizen] further stated that no lights are seen inside the residence, even when the Asian males arrive during night time hours.

Importantly, the concerned citizen's tip never mentions marijuana or any controlled substance. Although the activities described by the concerned citizen may be peculiar and would suggest that officers should investigate, that information, standing alone, cannot properly form the basis for the officer's expert opinion linking the citizen's observations to an indoor marijuana-grow operation. The warrant states, "Sergeant Clark knows through training and experience in conducting investigations and seizure of indoor marijuana grow operations that the activities described by the [concerned citizen] are characteristic [of] and consistent with the operation of an indoor marijuana grow operation." The majority opinion seems to interpret this statement from Sergeant Clark as if he were basing his opinion on a consideration of all the officers' observations during their investigation of the case, but instead he was referring only to the "activities described by the [concerned citizen]," and nothing about those activities was particularly suggestive of an indoor marijuana-grow operation. The officer's opinion that the concerned citizen's tip was consistent with the characteristics of an indoor marijuana-grow operation is speculative because it is based on

the mere facts that young Asian males regularly visit a house during the evening hours without turning on overhead lights and without moving in furniture and that whoever resides at the house does not garden or wash a car.  Although the citizen's tip may have suggested that something was amiss, it is a stretch to suggest that the tip reasonably supported the officer's suspicion that the residence contained an indoor marijuana-grow operation, or that the tip supported probable cause to suggest that marijuana might be found in the house when the search warrant was issued about one month later.

Third, the officer's general observation that high electricity usage is indicative of an indoor marijuana-grow operation is immaterial to our analysis of this case because there was no evidence that this residence actually had high electricity usage.  The warrant states,

> Your affiant and Sergeant Clark know, through training and experience in conducting investigations/seizures of indoor marijuana grow operations that: the operations consume large quantities of electrical power.  The large electrical power consumption is required to power high intensity metal halide grow light systems, air purification systems, supplemental air conditioning systems, water pumping and filtration systems.

Despite mentioning the importance of evidence showing high electricity usage, the affidavit then fails to state that there was any irregular electricity usage at the residence.  An appellate court's review of the adequacy of a probable-cause affidavit is limited to the facts and circumstances contained within the four corners of the document.  *See Bonds v. State*, 403 S.W.3d 867, 873 (Tex. Crim. App. 2013).  At most, the affidavit states that the utilities were registered to appellee, but it says nothing more about the quantity of electricity used at the residence.  Because the warrant indicates that irregular electrical usage is an important piece

of evidence to show an indoor marijuana-grow operation but then fails to show that any irregular electrical usage actually occurred at this residence, that fact weighs heavily against a finding that there was probable cause to show the existence of an indoor marijuana-grow operation. *See id.*

Fourth, the officer's general statements indicating "that hydroponic marijuana grow operators install supplemental air conditioning units in an effort to dissipate" the "excessive heat" from "high intensity metal halide grow lamps" are similarly immaterial to this case. Although this portion of the warrant sets up the expectation that the evidence will show the existence of supplemental air conditioning units, the evidence instead merely shows that, on one occasion, the officer observed the central air conditioner continuously running when it was cold outside. The warrant states, "While standing at the sidewalk in front of the residence, Clark could plainly hear the central air conditioning unit, which is located at the north end of the residence, running continuously." The mere fact that, on one occasion, a central air conditioning unit was left continuously running on a cold day does not suggest the existence of a marijuana-grow operation. And nothing in the warrant suggests that the house had supplemental air conditioning units, which, according to the affidavit, would be expected as part of a marijuana-grow operation. Despite the actual language in the affidavit that focuses on the connection between "supplemental air conditioning units" and indoor marijuana-grow operations, the majority opinion recharacterizes the affidavit by deciding that a central air conditioner that runs on a single cold day is information that equates with

supplemental air conditioning units that are installed for indoor marijuana-grow operations that must run daily to keep the high intensity halide grow lamps from damaging the plants due to their excessive heat. Courts should not recharacterize the facts that were before the magistrate and must consider only those facts contained within the four corners of the affidavit. *See id.* Because the officer's general statements discussing the importance of supplemental air conditioning units is not linked to the facts in this case, in which there were no supplemental air conditioning units nor anything other than a central air conditioner left running on a single cold day, that evidence must be discounted as immaterial to this case.

Fifth, the vast majority of the information used to support the warrant was stale and, absent probable cause to show an ongoing criminal activity, that information fails to show probable cause that marijuana would be found at the residence as of the date of the warrant's issuance. The search warrant was prepared and signed on November 27, 2012, based on activities that can be divided into three general periods: (1) the activities occurring between November 1 and November 13, 2012, as delineated in the chart below, (2) the activities occurring at some unknown time in November, and (3) the activities occurring on November 27, 2012.

The following chart shows that, had the search been conducted around mid-November, the officers likely would have had probable cause to search for marijuana in the house, but because the search was not conducted until late November, the information had become stale.

| Sometime between November 1 and 5, 2012 | November 6 and 8, 2012 | November 13, 2012 |
|---|---|---|
| Credible concerned citizen gives tip. | Officer observes mini blinds tightly drawn on every window in the residence. | Sergeant Clark walked to the front door and smelled raw marijuana. |
| Citizen reports that no furniture was moved in, no one lives at the residence, no lights are ever turned on in the residence, and no normal household activities occur at the residence. | Utilities at residence are registered in appellee's name, but his driver's license and concealed gun license show a different address. | The central air conditioning unit was running continuously. |
| Young Asian males arrive in a black Toyota SUV in the early evening and leave shortly thereafter. | The same black Toyota SUV is seen at a different address and is registered to someone other than appellee. | The ambient temperature outside the residence was 38 degrees. |

Aside from these events that occurred between November 1 and 13, the affidavit additionally described events occurring sometime in November, and an event that occurred on November 27. These additional events, even when examined in conjunction with those described in the chart above, were inadequate to establish probable cause for the search that occurred in late November.

Without stating any precise dates, the probable-cause affidavit indicates that Sergeant Clark conducted "night time surveillance at the suspected place for several nights. He observed that no lights were visible inside the residence other than at the front door, and a

single rear first floor light." Based on the observation that there was dim lighting in the house for several nights, the affidavit suggested that this fact, combined with the observations made by the concerned citizen, was evidence signifying a marijuana-grow house. The affidavit states:

> The officers know through training and experience in investigat[ing] marijuana grow operations that the operators often do not reside in the grow house. The officers also know through these investigations that the operators must tend to the live plants on a daily basis.

Aside from the reasonable inference that Sergeant Clark did not observe anyone residing at the house, the remainder of his statement is unconnected to the behavior that he personally observed. Nothing in the sergeant's affidavit suggests that he saw anyone coming and going on a daily basis or that he ever observed the driver of the Toyota truck going to the location at any point between the time when the concerned citizen contacted the police and approximately a month later when appellee was arrested after leaving the location. In the absence of anything to show that, during the month of November, after the citizen contacted the police, the officers ever observed daily visits to the location, there is an inadequate foundation for the sergeant's opinion that there was an ongoing marijuana-grow operation. *See id.* Again, the majority opinion focuses on the affidavit's statements that the lack of lighting suggests that no one lived at the house, but then, in seeming contradiction, the majority opinion does not consider that nothing in the affidavit shows that anyone was seen visiting the house at all, much less on a daily basis, for the entire month from the time of the citizen's tip to the time of the stop of appellee's car, and that, according to the affidavit, daily

visits would be necessary to tend to marijuana plants in an indoor marijuana-grow operation.

In addition, the search warrant does not describe the dates on which the surveillance occurred. Presumably this surveillance occurred between November 13 and November 27, 2012, because the paragraphs in the probable-cause affidavit appear to be discussing events in chronological order, but there is nothing in the warrant to indicate whether the surveillance occurred on November 13, 14, and 15, or on November 24, 25, and 26, or some other three-day interval.

Although I conclude that it is proper to infer that the events occurred at some point between November 13 and November 27 based on a reasonable assessment that the events described in the affidavit appear in chronological order, it would not be reasonable to further infer that the events occurred at the later point in time because there is nothing from which that inference could be reasonably made. Except for the traffic stop of appellee, therefore, all of the activities described in the probable-cause affidavit can reasonably be determined to have occurred during the first weeks of November 2012, which was about one to two weeks before the search warrant was signed on November 27.

Only one event that this Court properly can consider occurred shortly before the search warrant was issued, and that event fails to establish probable cause for the search of the house. On November 27, the affiant observed the same black Toyota SUV at the suspected residence, and it stayed there for several hours. After it left the residence, it was stopped for traffic violations, and the officer smelled "a strong odor that he knows through

training and experience to be that of raw marijuana coming from the vehicle and on the person" of the driver, who was appellee. But the presence of the raw marijuana smell in the car alone creates no "fair probability" that marijuana would be found inside the residence, and, therefore, the smell cannot show probable cause to support the search warrant. *See Rodriguez v. State*, 232 S.W.3d 55, 60 (Tex. Crim. App. 2007) ("Probable cause exists when, under the totality of the circumstances, there is a 'fair probability' that contraband or evidence of a crime will be found at the specified location."). Because there was no probable cause to show an ongoing criminal activity, as I explain in the next section, and because the dog-sniff evidence that the judge who signed the warrant considered must be excluded from our consideration, as I have explained above, the only timely information supporting the issuance of the search warrant was the smell of raw marijuana observed during the traffic stop, and that information was inadequate to show probable cause that there would be marijuana in the house.

Sixth, the search warrant lacked probable cause to show the existence of an ongoing criminal activity. In *Jones v. State*, this Court "suggested that time is a less important consideration when an affidavit recites observations that are consistent with ongoing drug activity at a defendant's residence." *Jones v. State*, 364 S.W.3d 854, 860 (Tex. Crim. App. 2012). This Court noted with approval that "federal circuits have held that the nature of the activity must be considered, and that, in appropriate circumstances, years could pass without information becoming stale." *Id*. at 861 (citations omitted). In short, evidence of ongoing

criminal activity will generally defeat a claim of staleness. *Id.* But in the absence of an ongoing criminal activity, information related to a drug offense will soon become stale. *Id.*

Examining the information in the search warrant in its totality, it fails to establish probable cause as to the existence of an ongoing indoor marijuana-grow operation. The facts show that no one was living in a residence for a period of anywhere from one to three months; young Asian males would reportedly visit the residence in the evenings and stay a short while, but the affidavit includes no information about whether they returned at all between the time of the citizen's tip and the stop of appellee; no light was emitted from the residence; on one day of one month, the blinds in the house were tightly shut, but the affidavit includes no information as to whether the blinds were shut at any other point in time during the month of the officer's surveillance; on one occasion, an officer smelled raw marijuana outside of the front door of the house; appellee did not live there but paid the utilities there; and one to two weeks after those events, on one occasion after he had been there for several hours, appellee and his car smelled like raw marijuana. According to the affidavit, evidence of high electricity usage and supplemental air conditioning units would have been indicative of an ongoing marijuana-grow operation, but no evidence of either of these circumstances was included in the affidavit. *See Bonds*, 403 S.W.3d at 873. Furthermore, according to the affidavit, daily visits to an indoor marijuana-grow house are necessary to tend to the plants when someone does not live at the residence, but the affidavit then fails to include any information to show that there were any visits to this location during

the month between the citizen's tip and appellee's arrest.

Assuming that all of these facts occurred shortly before the search warrant was signed, they arguably provide probable cause to believe that there might be marijuana in the house. The totality of these facts, however, is inadequate here because there was about a two-week gap of time between almost all of these facts and the issuance of the warrant. In short, all of the facts were stale, except for the smell of raw marijuana on appellee and in his car, and that smell was inadequate to establish probable cause for the search of the house.

To overcome the staleness of the facts presented in the probable-cause affidavit, the affidavit would have had to show probable cause of an ongoing criminal activity, but it failed in this respect. I note that, in assessing whether information that might otherwise be stale can support a probable-cause determination in light of the existence of an ongoing and continuous drug enterprise, courts have considered factors such as confirmation of ongoing drug activity from confidential informants; the defendant's prior drug-trafficking activities; and direct observations by law-enforcement agents indicating drug-trafficking activity.[1] By

---

[1] *See, e.g., United States v. Rojas-Alvarez*, 451 F.3d 320, 332 (5th Cir. 2006) (information in probable-cause affidavit was not stale due to existence of ongoing drug enterprise; affidavit clearly showed that defendant's family had been involved in drug dealing for several years and that confidential informant had recently purchased drugs from defendant's family members in controlled buys; additional information included rental-car histories and pattern of border crossings); *United States v. Myers*, 106 F.3d 936, 939 (10th Cir. 1997) (information was adequate to establish probable cause for ongoing and continuous marijuana-grow operation, and thus was not stale, when confidential informant told police that defendant was growing marijuana; a check of electrical records indicated high electrical and water usage at defendant's residence; and defendant had prior drug conviction); *United States v. Pena-Rodriguez*, 110 F.3d 1120, 1130 (5th Cir. 1997) (information in probable-cause affidavit described "long-standing, ongoing pattern of criminal activity," and thus was not stale, when affidavit included information from co-conspirator describing manner in which

contrast, here, there was little more than the smell of raw marijuana at the front door of the house on a single day to suggest that there was any drug activity at all at that location, let alone a "long-standing, ongoing pattern of criminal activity." *United States v. Rojas-Alvarez*, 451 F.3d 320, 332 (5th Cir. 2006) (citations omitted). Omitting the officer's general observations about marijuana-grow operations that were unconnected to the facts of this case and the impermissible dog-sniff evidence, the remainder of the affidavit contains isolated facts that, even taken together, do not amount to probable cause to believe that there was an ongoing indoor marijuana-grow operation.

## II. Good-Faith Exception for Search Warrants in Texas

In light of the numerous problems delineated above, the State should have asserted the good-faith exception to the exclusionary rule applicable to search warrants in an attempt to salvage this search. Because it failed to assert that legal theory as a basis for upholding this search in the trial court, the State cannot obtain the benefit of that law in this Court.

---

drugs were transported across country in hidden compartments, as well as "contemporary observations of government agents that tended to corroborate" co-conspirator's statements; because reasonable officer could have believed warrant was based on probable cause, good-faith exception applied); *United States v. Greany*, 929 F.2d 523, 525 (9th Cir. 1991) (information in probable-cause affidavit was adequate to establish ongoing marijuana-grow operation when it included statements from informant indicating that defendant had "openly discussed" plans to manufacture marijuana at his home, and when it included information regarding defendant's prior grow operation at another residence); *United States v. Minis*, 666 F.2d 134, 137, 140 (5th Cir. 1982) (information was adequate to establish probable cause for ongoing marijuana-grow operation, and thus was not stale, when police had intercepted incriminating phone calls in which defendants referred to volume and size of marijuana plants and to the present and past years' crops; these telephone conversations "clearly indicated that the growing of the marijuana was a continuing process").

Texas Code of Criminal Procedure Article 38.23(b) permits the admission of evidence obtained by an officer in violation of any provisions of the Constitution or laws of the State of Texas or the United States when "the evidence was obtained by a law enforcement officer acting in objective good faith reliance upon a warrant issued by a neutral magistrate based on probable cause." *See* TEX. CODE CRIM. PROC. art. 38.23(b); *McClintock v. State*, 444 S.W.3d 15, 20-21 (Tex. Crim. App. 2014) (holding that, excluding the unlawfully obtained dog-sniff evidence, the remaining portion of the search warrant did not establish probable cause, and, therefore, appellate court should consider whether the search should be upheld under the good-faith exception applicable to search warrants). Had the State argued to the trial court that the search warrant was obtained in good faith reliance on the dog-sniff evidence that was permissibly obtained before the *Jardines* decision, I might have voted to uphold the search conducted pursuant to the invalid search warrant under that legal theory. *See Jardines*, 133 S. Ct. at 1417-18.

### III. Conclusion

All of the events described in the affidavit supporting the search warrant occurred about two weeks before the warrant was issued, and the sole event, the smell of raw marijuana on appellee and in his car, that occurred shortly before the issuance of the warrant fails to establish probable cause for the search of the house. Furthermore, the totality of the affidavit fails to establish probable cause of an ongoing criminal activity that would permit a court to consider the stale information. Because I conclude that the search warrant was

unsupported by probable cause, I would uphold the judgments of both the trial court and the court of appeals, and, therefore, I respectfully dissent.

Filed: April 29, 2015

Publish