

# Fourth Court of Appeals

### San Antonio, Texas

## MEMORANDUM OPINION

No. 04-19-00231-CR

Patrick Thomas **CHILDERS**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 216th Judicial District Court, Kerr County, Texas
Trial Court No. A17313
Honorable Sid Harle, Judge Presiding[1]

Opinion by:    Sandee Bryan Marion, Chief Justice

Sitting:    Sandee Bryan Marion, Chief Justice
Patricia O. Alvarez, Justice
Beth Watkins, Justice

Delivered and Filed: February 5, 2020

AFFIRMED

Patrick Thomas Childers pled guilty to possession of a controlled substance with intent to

deliver and was sentenced to eighteen years' imprisonment. On appeal, Childers challenges the

trial court's order denying his first amended motion to suppress asserting: (1) the search warrant

was not supported by probable cause; (2) the search warrant failed to sufficiently describe the barn

where the controlled substance was seized; and (3) the officers executing the warrant exceeded the

---

[1] The Honorable N. Keith Williams presided over the hearing on appellant's first amended motion to suppress and signed the order denying the motion. The Honorable Sid Harle presided over the sentencing hearing and signed the judgment of conviction.

warrant's scope by entering property they were not authorized to enter. We affirm the trial court's judgment.

## BACKGROUND

On March 10, 2017, Investigator Lucas Flores signed a search warrant affidavit seeking to search the residence at 186 Stoney Hills Road, Center Point, Texas and "any outbuildings, including barns, on the ranch (B & R Ranches) at which said residence is located (and which may have an address of 218 Stoney Hill Road." The affidavit stated Investigator Flores believed Childers had committed the offense of possession of methamphetamine or possession of methamphetamine with intent to deliver and sought to search the property for methamphetamine and other items relating to illegal drug sales. The affidavit detailed the following information to establish probable cause.

On June 10, 2016, a confidential informant ("CI"), who had proven to be credible and reliable in the past, met with Investigator Flores and other members of the Special Crimes Unit ("SCU"). The CI advised that he purchased methamphetamine from Thomas Martin who was a middle man for Childers, and he could purchase one-fourth of an ounce of methamphetamine for $300.00. The CI also advised that Childers lived at 186 Stoney Hills Road, and the CI had been to the residence with Martin and Martin's girlfriend Jessica Perez at least fifty times. The SCU provided the money for the CI to make a controlled buy. During the controlled buy, the CI rode with Martin and Perez to 186 Stoney Hills Road. The CI waited in the car while Martin and Perez went inside the residence. When Martin and Perez returned to the car, Perez handed the CI a baggie containing methamphetamine. The SCU later weighed the methamphetamine and discovered it weighed 3.3 grams, which was less than one-fourth of an ounce. The CI contacted Martin and Perez and informed them of the discrepancy. The CI then arranged to purchase another

one-fourth of an ounce on June 13, 2016, and Martin and Perez agreed to include an additional three grams to make up for the shortfall.

On June 13, 2016, the SCU arranged the second controlled buy. On that date, the CI picked up Martin and drove to 186 Stoney Hills Road. When Martin knocked on the door, he was told Childers was not inside but "was at the barn located on the other side of the property." Martin returned to the car and told the CI to drive to the barn. The CI backed out of the driveway and drove down Stoney Hills Road to another gate on the property. The CI saw Childers on a riding lawn mower, and Martin exited the car and met with Childers who instructed them to return to the house at 186 Stoney Hills Road. Upon returning to the house, the CI stayed in the car while Martin went inside the house. Martin initially told the CI that Childers did not sell to him; however, when they arrived at Martin's house, Martin admitted Childers had sold to him and weighed out ten grams of methamphetamine that he gave to the CI.

On June 15, 2016, the CI told the SCU that Martin had called him multiple times to inform him Childers had a "new batch" of methamphetamine. The CI called Martin to arrange another purchase.

On July 22, 2016, Ed Hughes was arrested and interviewed. "Hughes was supplying large amounts of methamphetamine to several low level dealers in the Kerr County Area." Hughes confessed he sold methamphetamine to Childers just prior to his arrest. In January of 2017, Hughes was convicted of possession of methamphetamine with intent to deliver.

On August 9, 2016, Travis Craddock was arrested for possession of a controlled substance. Craddock told law enforcement he purchased methamphetamine from Childers on a daily basis.

On August 12, 2016, Hughes made a phone call from jail to an unidentified female. The phone call was recorded. In the phone call, the female advised Hughes that Childers had been

collecting money for him. Hughes told the female he had written Childers a letter giving him instructions on how to help with the business while Hughes was in jail.

On November 8, 2016, Jessica Perez, who was present during the CI's first controlled buy, was interviewed while in custody for drug charges. Perez stated she went with Martin to Childers's residence at 186 Stoney Hills Road at least twelve times to purchase methamphetamine from Childers. Perez also stated Martin would meet Childers every other day to purchase methamphetamine. Perez further stated they would sometimes meet at the barn on the property. After arriving at the barn, Martin would exit the car, meet Childers in the barn, and return with methamphetamine. The affidavit described the "barn" as "a barn located on the same ranch as the residence described in the 'suspect place and premises' paragraph above (to wit, B & R Ranches) but may have a different address than the residence located at 186 Stoney Hills Road, Center Point, Kerr County, Texas and may have the address of 218 Stoney Hills Road, Center Point, Kerr County, Texas."

On March 9, 2017, Investigator Flores interviewed Julie Smith. Smith stated she purchased methamphetamine from Childers at least fifty times beginning in 2014 to approximately December 2016. Smith purchased the methamphetamine to resell it. Smith further stated Childers replenishes his supply every week on Thursday nights.

Finally, the affidavit stated Investigator Flores knew, based on his training and experience, that individuals who sell methamphetamine store the drug in outbuildings at their residence or to which they have easy access, such as outbuildings located on the same ranch as their residence. The affidavit was presented to a county court at law judge who issued a search warrant to search the residence at 186 Stoney Hills Road and "any barns located on B& [sic] Ranches on Stoney Hill Road in Center Point, Kerr County, Texas."

After Childers was charged with possession of methamphetamine with intent to deliver, he filed a motion to suppress asserting both the search warrant affidavit and search warrant were defective. On November 14, 2018, the trial court held a hearing on the motion. At the beginning of the hearing, the attorneys disagreed as to whether the trial court was constrained to the four corners of the affidavit or could consider the testimony of the witnesses Childers sought to call to testify. Childers's attorney argued the witnesses' testimony was necessary to establish Childers's standing to challenge the search of the barn. The trial court allowed the testimony.

Childers testified he resides at 186 Stoney Hills Road and is employed as a mechanic for his father's auto sales business. The car lot is located in Kerrville; however, Childers worked on the vehicles at a red metal workshop located on his father's property at 218 Stoney Hills Road. Childers testified his father owns the workshop; however, Childers has the authority to determine who can enter the workshop when his father is not present. Childers also stated he keeps his tools and equipment in the workshop. Photographs of the tools and equipment were admitted as evidence. Before the State was given the opportunity to cross-examine Childers, Childers's daughter was called to testify about the location of 186 Stoney Hills Road and 218 Stoney Hills Road.

Childers's daughter testified: (1) her father's house is located on a ten-acre tract of land at 186 Stoney Hills Road; (2) her great-grandfather's house is located on a ten-acre tract of land at 210 Stoney Hills Road; and (3) her grandfather's house is located on a ten-acre tract of land at 218 Stoney Hills Road. The following plat depicts the three properties:



The State then cross-examined Childers, who admitted 186 Stoney Hills Road, 210 Stoney Hills Road, and 218 Stoney Hills Road are all on one big piece of property. All three properties can be accessed by walking or driving a four-wheeler through gates. Childers further admitted he had full access to the barn located at the 218 Stoney Hills Road property which was previously referred to as a workshop.

On re-direct examination, Childers testified B & R Ranches is a subdivision composed of 178 tracts of land. Thirteen of those tracts of land front Stoney Hills Road, including the tracts owned by Childers, his father, and his grandfather.

At the conclusion of the hearing, the trial court took the matter under advisement. On November 27, 2018, the trial court signed an order denying the motion. After Childers pled guilty to the offense and was sentenced, the trial court entered written findings of fact and conclusions of law in support of its denial of the motion to suppress.

**PROBABLE CAUSE**

Both the Texas and United States Constitutions require a search warrant to be based on probable cause that evidence of an offense will be found through the execution of the search warrant. *Hyland v. State*, 574 S.W.3d 904, 910 (Tex. Crim. App. 2019). "Probable cause exists when reasonably trustworthy facts and circumstances within the knowledge of the officer on the scene would lead a man of reasonable prudence to believe that the instrumentality of a crime or

evidence pertaining to a crime will be found." *Id*. (internal quotation omitted). "In determining whether probable cause exists to support the issuance of a search warrant, the magistrate to whom the probable cause affidavit is presented is confined to considering the four corners of the search warrant affidavit, as well as to logical inferences the magistrate might draw based on the facts contained in the affidavit." *Id*. at 910-11. "The determination of whether probable cause exists is a 'totality of the circumstances' inquiry, based on the magistrate's reasonable reading of the affidavit, but the magistrate may not act as a mere 'rubber stamp.'" *Id*. at 911.

"Generally, a reviewing court applies a presumption of validity regarding a magistrate's determination that a search warrant affidavit supports a finding of probable cause." *Id*. As a result, this court must ordinarily review the magistrate's probable cause determination and decision to issue the warrant with great deference. *Id*. And, we "must uphold the magistrate's decision so long as the magistrate had a substantial basis for his finding." *Id*. (internal quotation omitted).

Childers contends the search warrant affidavit was deficient because:

> . . . it is based on hearsay on top of hearsay from non-credible persons and the alleged Confidential Informant ("CI") never saw Appellant in possession of drugs and never witnessed or participated in any alleged drug transaction. He merely repeated to the police officer/affiant, what other, non-credible persons told him.

Childers's argument, however, disregards the law applicable to named informants and controlled buys.

In addition to the information provided by the confidential informant, the search warrant affidavit contained information regarding Childers's drug dealing from four named informants. The Texas Court of Criminal Appeals has held that "'when a probable cause affidavit *specifies a named informant* as supplying the information upon which probable cause is based, the affidavit is sufficient *if it is sufficiently detailed* to suggest *direct knowledge* on the informant's part.'" *See State v. Elrod*, 538 S.W.3d 551, 559 (Tex. Crim. App. 2017) (quoting *Matamoros v. State*, 901

S.W.2d 470, 478 (Tex. Crim. App. 1995)) (emphasis in original). Here, three of the named informants gave information about their purchases of methamphetamine from Childers including the frequency and timing of their purchases. Thus, each of them was a "named informant who was an eyewitness to criminal activity in which [he or] she was involved," and the magistrate "was able to assess [their] reliability based upon the details [he or] she provided." *Id*. at 558-59. The magistrate, therefore, correctly determined the four corners of the affidavit "established a 'fair probability' that evidence of a particular crime would likely be found" at the barn described in the affidavit. *Id*. at 560.

In addition to the information provided by the named informants, the information provided by the confidential informant was corroborated based on the fact that his purchases were made through controlled buys. "The circumstances of a controlled buy, standing alone, may corroborate an informant's tip and provide probable cause to issue a warrant." *State v. Griggs*, 352 S.W.3d 297, 305 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *see also Sadler v. State*, 905 S.W.2d 21, 22 (Tex. App.—Houston [1st Dist.] 1995, no pet.) (same).

Finally, Childers contends the information in the affidavit was stale. However, as Childers's own brief acknowledges, "where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." *Jones v. State*, 364 S.W.3d 854, 861 (Tex. Crim. App. 2012) (internal quotation marks omitted). In *Jones*, ten months elapsed between the date the information was provided and the issuance of the warrant. *See id*. at 862. The court held, "The controlled buy, combined with the previous information from at least two informants that drugs were being sold from the address, was sufficient to establish probable cause that a continuing drug business was being operated from the residence, a secure operational base." *Id*. Here, the magistrate could determine Childers was engaged in an ongoing drug business based on the controlled buys, the information from the four

named informants, and the letter Hughes stated he sent to Childers instructing him on how to maintain the business while Hughes was in jail. Accordingly, we reject Childers's argument that the gap of four months in this case posed a staleness problem. *See id*.

### LOCATION SEARCHED

Childers's second and third issues relate to the location searched. In his fourth issue, Childers contends the search of the barn exceeded the scope of the warrant.

Childers first contends the barn from which the methamphetamine was seized was located on a "third person's" property which had a different address from his residence. If the barn was truly located on a "third person's" property, Childers would not have standing to challenge the search; however, the trial court found Childers did have standing because: (1) Childers has the ability to walk or ride his four-wheeler vehicle to and from the barn and his home; (2) the barn is located on Childers's family properties where other family members' residences are located; (3) the family properties are contiguous; (4) Childers worked as a mechanic at the "workshop" barn and stored his tools and machines at the barn; and (5) Childers exercised the right to exclude others when his father was not present.

Childers next contends the barn was not sufficiently described in the affidavit and the affidavit did not establish probable cause to search the barn. We disagree. During the second controlled buy, the CI and Martin were directed to a barn which was described as being located "on the other side of the property," and the CI drove down Stoney Hills Road to another gate on the property in an effort to reach the barn. Perez also referred to purchasing methamphetamine from a barn on the property. Investigator Flores stated individuals who sell methamphetamine store the drug in outbuildings to which they have easy access. Finally, the barn is described as "a barn located on the same ranch as the residence described in the 'suspect place and premises' paragraph above (to wit, B & R Ranches) but may have a different address than the residence

located at 186 Stoney Hills Road, Center Point, Kerr County, Texas and may have the address of 218 Stoney Hills Road, Center Point, Kerr County, Texas."

Even if the description of the barn in the affidavit was ambiguous, the magistrate could have logically inferred from the affidavit that Investigator Flores was familiar with the barn to be searched. *See Hyland*, 574 S.W.3d at 910-11 (noting magistrate entitled to draw logical inferences based on facts contained in the affidavit and magistrate's probable cause determination is reviewed with great deference). In addition, Investigator Flores was both the affiant and participated in the execution of the warrant. Although we must generally limit our review to the four corners of the search warrant affidavit, the Texas Court of Criminal Appeals has held that an officers' knowledge can be factored into deciding if the location is sufficiently described because it mitigates the fear of a warrant authorizing a general search. *Bonds v. State*, 403 S.W.3d 867, 877 (Tex. Crim. App. 2013). In *Bonds*, the court held the officer's "familiarity with the location to be searched and that he was both the affiant and participated in the warrant's execution are circumstances which resolve any ambiguity created by the description's errors and render the warrant sufficiently particular." *Id*.; *see also Rogers v. State*, 291 S.W.3d 148, 152 (Tex. App.—Texarkana 2009, pet. ref'd) (citing cases concluding "when the same police officer conducts the investigation, swears to the affidavit for the warrant, and executes the search warrant, that officer's knowledge of the exact premises may cure description deficiencies in the warrant or affidavit). Here, Investigator Flores's familiarity with the barn and his participation in the warrant's execution resolved any ambiguity. *See Bonds*, 403 S.W.3d at 877; *Rogers*, 291 S.W.3d at 152.

Because we hold the barn was sufficiently described in the search warrant affidavit or Investigator Flores's participation in the execution of the warrant resolved any ambiguity, we also overrule Childers's fourth issue asserting the officers were not authorized to search the barn.

## CONCLUSION

The judgment of the trial court is affirmed.

Sandee Bryan Marion, Chief Justice

DO NOT PUBLISH