# COURT OF APPEALS
**SECOND DISTRICT OF TEXAS**
**FORT WORTH**
**NO. 02-12-00062-CR**
**NO. 02-12-00063-CR**


GERARDO TOMAS RIVAS                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 4 OF TARRANT COUNTY
TRIAL COURT NO. 1215971D, 1215973D

----------

## OPINION ON REMAND

----------

### I. Introduction

On October 30, 2009, the trial court placed Appellant Gerardo Tomas Rivas on deferred adjudication community supervision after Rivas entered open pleas of guilty to possession with intent to deliver a controlled substance (cocaine) of one gram or more but less than four grams; possession of a controlled substance (psilocin) of 400 grams or more; and possession with intent

to deliver a controlled substance (hydrocodone) of twenty-eight grams or more but less than 200 grams. *Rivas v. State* (*Rivas I*), Nos. 02-11-00203-CR, 02-11-00204-CR, 02-11-00205-CR, 2012 WL 5512450, at *1 (Tex. App.—Fort Worth Nov. 15, 2012, no pet.) (mem. op., not designated for publication).

Less than a year later, on September 27, 2010, Rivas was detained for new drug offenses—possession with intent to deliver a controlled substance (psilocin) of 400 grams or more and possession with intent to deliver a controlled substance (tetrahydrocannobinol) of four grams or more but less than 400 grams—after police obtained a search warrant for his apartment based on a tip from Andrew Munchrath, who they had arrested during an undercover drug buy. *See id.* at *1–2. The State petitioned to proceed to adjudication based on the new offenses and, after denying Rivas's motion to suppress,[1] the trial court found that Rivas had committed these new offenses by a preponderance of the evidence, revoked his deferred adjudication community supervision, and adjudicated him guilty of the three drug offenses. *See id.* at *2–3. We affirmed after determining that the magistrate had a substantial basis for concluding that the search warrant was supported by probable cause based on a drug-sniffing police dog's alert to Rivas's front door on the same day that the warrant was obtained and executed. *Id.* at *1, 5.

---

[1]In *Rivas I*, Rivas argued in the trial court that Munchrath had no credibility, that his tip was uncorroborated, and that the search warrant affidavit's information was stale. 2012 WL 5512450, at *4.

The trial court revisited Rivas's suppression arguments in the subsequent trial on the new drug offenses. *Rivas v. State (Rivas II)*, Nos. 02-12-00062-CR, 02-12-00063-CR, 2013 WL 978911, at *1 (Tex. App.—Fort Worth Mar. 14, 2013, pet. granted) (mem. op., not designated for publication), *vacated*, 411 S.W.3d 920 (Tex. Crim. App. 2013).[2] After it again denied Rivas's motion to suppress, Rivas pleaded guilty to the new offenses in exchange for seventeen years' confinement on each count, to be served concurrently. *Id.*

Twelve days after we affirmed the trial court's judgments, the United States Supreme Court issued *Florida v. Jardines*, in which it concluded that using a drug-sniffing dog on a homeowner's porch to investigate the home's contents was a "search" under the Fourth Amendment. 133 S. Ct. 1409, 1413, 1415 & n.2, 1417–18 (2013) (holding suppression appropriate when Jardines had not given the police leave, even implicitly, to explore his home's curtilage with a trained drug dog).[3] The court of criminal appeals vacated our judgment and

---

[2]In *Rivas II*, Rivas re-urged his *Rivas I* arguments and argued that the drug-detection dog's open-air sniff of his apartment door was illegal and was insufficient to support probable cause because the dog's credentials were not adequately established. 2013 WL 978911, at *1.

[3]In *Jardines*, police received an unverified tip about marijuana being grown in Jardines's home and a month later brought a drug-sniffing dog to Jardines's front porch. 133 S. Ct. at 1413. The dog made a positive alert for narcotics, and the police used that information to obtain a search warrant. *Id.* The Supreme Court held that whether the officer's conduct was objectively reasonable depended upon whether he had an implied license to enter the porch, which in turn depended upon the purpose for which he entered it. *Id.* at 1417. When police behavior objectively revealed a purpose to conduct a search, there was no implied license. *Id.*

remanded *Rivas II* for us to reconsider in light of *Jardines.* 411 S.W.3d at 921. Concluding that *Jardines* does not affect the outcome, we affirm.

## II. Discussion

In his original appellate brief in this case, Rivas argued that the trial court erred by denying his motion to suppress because the affidavit supporting the search warrant did not state probable cause, in that it did not allege that Munchrath was credible, the police did not corroborate Munchrath's information, the affidavit's facts were stale, and the dog sniff was illegal. *Rivas II*, 2013 WL 978911, at *1. We must determine whether, excluding the dog-sniff, the affidavit was sufficient to support the magistrate's probable cause determination. *See Martin v. State*, 67 S.W.3d 340, 343 (Tex. App.—Texarkana 2001, pet. ref'd) (stating that if the illegally obtained information is clearly unnecessary to establish probable cause for the search warrant, the defendant could not have been harmed by its inclusion).

When the trial court determines probable cause to support the issuance of a search warrant, there are no credibility determinations; instead, the trial court is constrained to the four corners of the affidavit. *State v. McLain*, 337 S.W.3d 268, 271 (Tex. Crim. App. 2011). Accordingly, when reviewing a magistrate's probable cause determination, we apply the deferential standard of review articulated by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317 (1983). *Swearingen v. State*, 143 S.W.3d 808, 811 (Tex. Crim. App. 2004). Under that standard, we uphold the probable cause determination

4

"so long as the magistrate had a 'substantial basis for . . . conclud[ing]' that a search would uncover evidence of wrongdoing." *Gates*, 462 U.S. at 236, 103 S. Ct. at 2331; *see also McLain*, 337 S.W.3d at 271; *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). Probable cause exists when, under the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found at the specified location, and the facts stated in a search warrant affidavit are "so closely related to the time of the issuance of the warrant that a finding of probable cause is justified." *McLain*, 337 S.W.3d at 272. "The focus is not on what other facts could or should have been included in the affidavit; the focus is on the combined logical force of facts that are in the affidavit." *State v. Duarte*, 389 S.W.3d 349, 354–55 (Tex. Crim. App. 2012).

With regard to an informant's tips, we take into account the informant's veracity, reliability, and basis of knowledge to determine the value of his assertions, as well as whether his information is stale. *Davis v. State*, 144 S.W.3d 192, 197 (Tex. App.—Fort Worth 2004, pet. ref'd) (op. on reh'g); *see also Gates*, 462 U.S. at 233, 103 S. Ct. at 2329 (stating that a deficiency in one of the considerations may be compensated for by a strong showing of another or some other indicia of reliability in determining the tip's overall reliability); *McKissick v. State*, 209 S.W.3d 205, 214 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) (discussing staleness). With regard to staleness, time is a less important consideration when an affidavit recites observations that are consistent with

5

ongoing drug activity at a defendant's residence. *Jones v. State*, 364 S.W.3d 854, 860–61 (Tex. Crim. App.), *cert. denied*, 133 S. Ct. 370 (2012).

A tip by a confidential informant of unknown reliability, standing virtually alone, is not a sufficient basis for a magistrate's probable cause determination.[4] *Duarte*, 389 S.W.3d at 353, 360–61 ("We decline to equate the reliability of a first-time, unnamed informant with that of a named-citizen informant."). In contrast, an affidavit that identifies a named informant as supplying the information upon which probable cause is based is sufficient if it is sufficiently detailed to suggest direct knowledge on the informant's part. *Matamoros v. State*, 901 S.W.2d 470, 478 (Tex. Crim. App. 1995). The facts contained in the affidavit need only provide a "fair probability" that the informant obtained his knowledge through first-hand accounts. *Gates*, 462 U.S. at 246, 103 S. Ct. at 2336.

As we previously set out in *Rivas I*,

> In his affidavit supporting the application for a search warrant to search Rivas's apartment for marijuana and mushrooms, Officer Williams stated that on or around September 27, 2010—the same

---

[4]If a confidential informant's tip is corroborated, constitutes a statement against penal interest, is consistent with other informants' information, is a detailed first-hand observation, or is coupled with an accurate prediction of a subject's future behavior, probable cause for issuance of a search warrant exists notwithstanding any actual or potential quid pro quo received by an informant with pending criminal charges in exchange for his information. *Duarte*, 389 S.W.3d at 356–57. In *Duarte*, the magistrate was presented only with information obtained from a first-time confidential informant with pending criminal charges and no other verifying information besides the defendant's address on a 2008 traffic ticket. *Id.* at 351–53.

day that the warrant was issued and executed—a white male known as "Jerry"—"about 6'0", 300 lbs, approximately 45–50 years old, and known as 'Gerardo Rivas'"—was unlawfully possessing mushrooms and marijuana at 14605 Chimney Meadow Street, in the City of Fort Worth, Tarrant County, State of Texas, at the Centre Oaks Apartments, in apartment # 226. In his affidavit, Officer Williams described the target building and further stated, in pertinent part, the following facts and circumstances supporting his application as:

2. That on or about the 27th day of September, 2010, your affiant, along with other Officers of the Fort Worth Narcotic Unit continued an investigation of illegal mushrooms containing psilocybin sales from a subject identified as Andrew Munchrath W/M 2/15/92.

3. That on the 27th day of September, 2010, your affiant and Officer Vanwey # 3557 were acting in undercover capacity, driving an unmarked car. Officer Vanwey and your affiant had previously negotiated to buy 2½ lbs of mushrooms from Munchrath in exchange for $5,000.00 of U.S. Currency during a previous encounter. At approximately 1400 hours, Munchrath called your affiant and Officer Vanwey and told us that he had the 2½ lbs of mushrooms and to meet him at 3861 S Cooper St at the AMC Theatre parking lot to buy them. We pulled up to this location and met with Munchrath. As Officer Vanwey met with Munchrath, he pulled out two plastic baggies containing mushrooms, which by smell and look are believed to contain psilocybin, in order to sell them to Officer Vanwey. As he did, Officer Vanwey gave the pre-determined arrest signal. We observed the arrest procedure and positively identified Narcotics Officers arresting Munchrath, and that he was the same person that sold us the mushrooms that are believed to contain psilocybin. Munchrath was arrested for Del C/S PG1 >400 GM.

4. That after Munchrath was arrested, Officer White read Munchrath his Miranda Rights and began to interview him. During the interview, Munchrath told Officer White that he picked up the 2 ½ lbs of mushrooms from a W/M named Jerry while Munchrath was at work. This information was also confirmed by your affiant during the previously mentioned undercover operation. Munchrath told Officer White that Jerry lived at the Centre Oaks Apartments. Munchrath said that

approximately 3–4 weeks ago, Munchrath observed a large amount of mushrooms and marijuana, and cocaine in Jerry's apartment. Munchrath said that when picking up the mushrooms from Jerry for this deal, Jerry told him that he had 8 lbs of mushrooms and 1 lb of marijuana at his apartment right now, but that he was selling the rest to another buyer.

5. That once this interview was concluded, Officer Christensen # 3523 drove Munchrath by this apartment complex. While at this apartment complex, Munchrath pointed out and showed Officers the exact apartment complex and apartment residence that Jerry lives in, which was apartment # 226 at 14605 Chimney Meadow St. at the Centre Oaks Apartment.

2012 WL 5512450, at *1–2.

Although the affidavit did not include an allegation that Munchrath was credible and—other than the dog-sniff—there was no express corroboration of Munchrath's information by the police, Munchrath was a named informant, and the magistrate could have found his information recent and detailed enough to suggest that he had direct knowledge sufficient for a probable cause determination. *See Matamoros*, 901 S.W.2d at 478; *see also Dixon v. State*, 206 S.W.3d 613, 617 (Tex. Crim. App. 2006) ("An informant's first-hand observation of criminal activity provides a strong basis for the informant's knowledge of the facts he relays."); *State v. Stone*, 137 S.W.3d 167, 178 (Tex. App.—Houston [1st Dist.] 2004, pet ref'd) (stating that credibility need not be independently established when no confidential informant is used). Specifically, Munchrath told police about the existence of previous drug transactions and the exact amount of mushrooms and marijuana that could be found in the apartment "right now," and

8

he identified Rivas's specific apartment complex and unit. *See Flores*, 319 S.W.3d at 703 (indicating that when informant has familiarity with subject and his affairs, magistrate could reasonably conclude that informant's tip regarding illegal activities was relevant consideration in probable cause analysis). Munchrath's statement regarding the amount of drugs he had seen in Rivas's apartment three or four weeks earlier also tends to indicate that this was an ongoing operation. *See Jones*, 364 S.W.3d at 860–61; *McKissick*, 209 S.W.3d at 214. Therefore, we conclude that, even excluding the dog sniff, the magistrate could have reasonably found that the search warrant affidavit established probable cause.[5]

## III. Conclusion

Having reconsidered our prior opinion in light of *Jardines* as directed by the court of criminal appeals, we affirm the trial court's judgment.

PER CURIAM

PANEL: MCCOY, J.; LIVINGSTON, C.J.; and GABRIEL, J.

PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: September 25, 2014

---

[5]Based on this conclusion, we do not reach whether *Jardines* should apply retroactively. *See* Tex. R. App. P. 47.1.

9