

IN THE
TENTH COURT OF APPEALS

No. 10-15-00116-CR
No. 10-15-00117-CR

EDWARD DEAN STEWART,

Appellant

v.

THE STATE OF TEXAS,

Appellee

From the 77th District Court
Limestone County, Texas
Trial Court Nos. 13281-A and 13574-A

MEMORANDUM OPINION

Appellant Edward Dean Stewart pleaded guilty to continuous sexual abuse of a

child and aggravated sexual assault of a child pursuant to a plea agreement. The trial

court sentenced Stewart to forty years' incarceration on the continuous sexual abuse

charge and eighty years' incarceration on the aggravated assault charge, with both terms

to be served concurrently. In his sole issue in each of these appeals, Stewart contends that

the trial court erred in denying his motion to suppress.[1]

## Background

A search warrant was executed on Stewart's residence in July 2012 seeking evidence of methamphetamine trafficking. Law enforcement found no narcotics but did discover methamphetamine paraphernalia, guns, and several electronic devices. The electronic devices were turned over to the Secret Service for analysis, and child pornography was discovered. A second warrant was executed at Stewart's residence in November 2013, seeking any other evidence of child pornography. Additional information was discovered, leading to the identity of Stewart's victims. The children were questioned by a forensic examiner and identified Stewart as their abuser.

Stewart's motion to suppress challenged the sufficiency of the affidavit supporting the July 2012 search warrant. He did not challenge the sufficiency of the November 2013 warrant, but contended that any evidence seized thereunder should be excluded as "fruit of the poisonous tree" from the invalid July 2012 warrant.

The affidavit supporting the July 2012 warrant, composed by Sgt. Christopher Winkler, includes the following:

> The undersigned Affiant, being a Peace Officer under the laws of Texas and being duly sworn, on oath makes the following statements and accusations:
>
> 1. THERE IS IN LIMESTONE COUNTY, TEXAS, A SUSPECTED PLACE

---

[1] Although no written motion to suppress was filed in Cause No. 10-15-00117-CR, the trial court entered a written order denying the motion to suppress in both cause numbers. It is also clear from the record of the evidentiary hearing that the trial court considered the motion to suppress in both cases.

AND PREMISES DESCRIBED AND LOCATED AS FOLLOWS:

Suspected premise is a single family, single story dwelling located at 3261 Limestone County Road 460, Mexia, Texas, 76667. Suspected premise is further described as having red siding. The residence has a covered front porch. The residence is located at the end of a long white rock drive. There are approximately 3 travel trailers on the property. There is a confederate flag and a State of Texas flag at the entrance to the property. See Attachment "A".[2] Also to include any and all vehicles located on or about the curtilage under the control of the suspected parties. To include all places, structures and buildings on the property, as well as all vehicles on the property under the control of the suspected parties. Hereinafter called "Suspected Premises".

2. THERE IS IN SUSPECTED PREMISES PROPERTY CONCEALED AND KEPT IN VIOLATION OF THE LAWS OF TEXAS AND DESCRIBED AS FOLLOWS: The items and property that constitute evidence include, controlled substances, listing of individuals who purchase illegal controlled substance[s], listing of persons that sell and/or deliver illegal controlled substance[s] to this location, listings of telephone numbers and other contact information of both purchasers and sellers of illegal controlled substances to the occupants of the said "suspected premises," addresses of locations where drugs are brought to this location from, listings of names of individuals who have received illegal controlled substances at this location and who owe money for those illegal controlled substances purchased, and messages and communications between the occupants of the said "suspected premises" and individuals to whom the illegal controlled substances are delivered to as well as the names, telephone numbers and addresses of individuals whom illegally traffic illegal controlled substances to and from the said "suspected premises." Affiant requests to search for the items that constitute evidence of illegal distribution of controlled substances to wit:

A. Controlled substances, namely methamphetamine and marijuana;

B. Books, records, receipts, notes, ledgers, bank records, money orders, papers, and computer files relating to the transportation, ordering, sale,

---

[2] Attachment "A" was not part of the affidavit introduced as an exhibit at the suppression hearing.

manufacture and distribution of illegal controlled substances;

C. Currency, financial instruments, precious metals, jewelry and/or other items of value and/or proceeds of drug transactions and evidence of financial transactions relating to obtaining, transferring, laundering, secreting or spending large sums of money made from engaging in illegal controlled substances activities;

D. Telephone and address books, or papers as well as telephone answering machine tapes and information stored electronically in caller identification devices, which reflect names, addresses and/or telephone numbers of individuals associated in dealing in illegal controlled substances;

E. Photographs of individuals, property and illegal controlled substances, including video recordings;

F. Materials used in the packaging, cutting, weighing and distributing of illegal controlled substances;

G. Computer disks, diskettes, tablets and digital data storage devices utilized to maintain drug transaction records;

H. Firearms;

I. Any electronic devices including but not limited to cell phones, pda's, video surveillance systems, and audio recording devices.

J. Any safes or lock boxes within the premise or curtilage of the residence.

K. Stolen property including but not limited to all terrain vehicles, trailers and firearms.

The items listed above constitute evidence of an ongoing and continuing involvement in the sale and distribution of illegal controlled substances in violation of various sections of the TEXAS HEALTH AND SAFETY CODE.

3. SAID SUSPECTED PREMISES ARE IN CHARGE OF AND CONTROLLED BY EACH OF THE FOLLOWING PERSONS: (1) Edward Dean Stewart, a white male, date of birth 05-12-1975, also to include person or persons whose names, identities and descriptions are unknown to your

affiant, who may reside, be found on, entering or making their escape therefrom, hereinafter called "suspected parties".

4. AFFIANT HAS PROBABLE CAUSE FOR SAID BELIEF BY REASON OF THE FOLLOWING FACTS: Affiant, Investigator Christopher Winkler, is a Texas Peace Officer. Affiant has been employed with the Limestone County Sheriff's Office for over 5 years. Affiant has received training in Narcotics Investigations and is currently employed as Limestone County's Narcotics Officer. Affiant has undergone various training and has experience in narcotics investigations. Affiant has made multiple drug related arrests. Affiant has executed multiple narcotic search warrants in the past. Affiant has participated and assisted in joint investigations with law enforcement agents of the Federal Drug Enforcement Administration and various other law enforcement agencies in their investigations of individuals who traffic in illegal controlled substances. Affiant has talked with other experienced local, state and federal law enforcement officers as well as prosecuting attorneys representing both state and federal systems concerning narcotics and dangerous drug trafficking activities and criminal violations. Affiant has performed narcotics and dangerous drug law enforcement activities and functions. Affiant has participated in numerous investigations of individuals who have ultimately been convicted of both state and federal laws pertaining to narcotics and dangerous drugs.

Affiant has participated in the execution of court ordered search warrants of residences and vehicles where large amounts of illegal drugs, currency and records were discovered and seized. During the course of these investigations, I have worked in the company of other experienced law enforcement officers and have discussed their investigative techniques and experiences with them. During the course of the investigations, which I have been a party to, I have become familiar with business practices of drug traffickers.

BASED ON AFFIANT'S EXPERIENCE AND TRAINING, AFFIANT KNOWS THE FOLLOWING:

A. Individuals who deal in illegal controlled substances maintain books, notes, receipts, ledgers, bank records, money orders and other papers relating to the transportation, sale and distribution of illegal controlled substances. These individuals commonly provide illegal controlled substances to their clients on consignment and therefore keep some type of

records concerning monies owed. The aforementioned books, records, receipts, notes, ledgers, etc., are maintained where the dealer in illegal controlled substances has ready access to them, such [as] in secure locations within their residences and surrounding curtilage, residences of family members and/or friends and associates, places in which they conduct their drug distribution activities such as stash houses or safe houses, or in storage areas;

B. Individuals who deal in illegal controlled substances routinely conceal in their residence, place of operation, or motor vehicle, caches of illegal controlled substances, large amounts of currency, financial instruments, precious metals, jewelry and other items of value and/or proceeds of illegal controlled substance transactions relating to obtaining, transferring, secreting or spending large sums of money made from engaging in illegal controlled substances activities;

C. Individuals who deal in illegal controlled substances routinely conceal illegal proceeds of drug sales and records of drug transactions in secure locations within their residences, place of operation, or motor vehicles for ready access and to conceal them from law enforcement agencies;

D. Individuals who deal in illegal controlled substances commonly maintain address and/or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers for their associates in their illegal organization.

E. Individuals who deal in illegal controlled substances take or cause to be taken photographs of themselves, their associates, their property and their illegal controlled substances. These photographs are usually maintained in their place of residence, or residences of family members, friends or associates, business locations, or in places from which they conduct their distribution activities.

F. Individuals who deal in illegal controlled substances usually keep paraphernalia for packaging, cutting, weighing and distributing illegal controlled substances. This paraphernalia includes scales, plastic bags, and cutting agents;

G. Narcotics traffickers keep and utilize computers and other electronic devices for the purpose of maintaining records, receipts, notes, ledgers,

bank records, money orders and other documents or records relating to the importation, manufacture, transportation, ordering, sale and distribution of illegal controlled substances. Additionally, narcotics traffickers utilize computers and other electronic devices as a means of communication, such as: the internet, in order to conduct their narcotics trafficking business. These computers and other electronic devices are maintained in locations to which narcotics traffickers have ready access, such as in secure locations within their residences and surrounding curtilage; residences of family members, friends and associates; places in which they conduct their drug distribution activities, such as stash houses or safe houses; in business locations in which the trafficker is associated, or in storage areas.

H. Narcotics traffickers often own[,] possess and/or use weapons as a means of facilitating their illegal drug activities. Such weapons are most often secreted in their residences to include surrounding curtilage, or residences of family members, friends or associates, or in the places from which they conduct drug distribution activities, such as stash houses or safe houses. These individuals also often possess ammunition and other items pertaining to the possession of firearms, including gun cases, ammunition magazines, holsters, spare parts for firearms, firearms cleaning equipment, photographs of firearms or of persons in possession of firearms, and receipts for the purchase and/or repair of all these items.

I. Based on my prior training and experience, I have observed that narcotics traffickers keep and use cellular telephones and technology associated with this type of equipment as a primary means of communications in order to conduct their narcotics trafficking business. Additionally, narcotics traffickers commonly maintain telephone numbers and address books or papers, which reflect names, addresses and/or telephone numbers for their associates. These telephone records, bills and pager numbers are often found in their place of residence, or in the residences of family members, friends and associates, business locations, or in the places from which they conduct their distribution activities. Narcotics traffickers keep and use co-conspirators['] addresses and telephone numbers in the memory of cellular telephone devices and other personal organizer type . . . electronic devices in order to facilitate their illegal narcotics activities. Additionally narcotics traffickers utilize voicemail messaging and text messaging services provided by cellular telephone companies systems to send and receive instructions, directions and the results of illicit narcotics related activities to other co[-]conspirators involved in said activities. Narcotics traffickers also

use numerous cellular telephones to communicate with co-conspirators in order to confuse the efforts of law enforcement.

J.  Individuals who deal in illegal controlled substances commonly use safes and lock boxes to maintain security of contraband items to wit:  weapons, records and narcotics.

K.  Individuals who deal in illegal controlled substances commonly possess stolen property as proceeds of drug transactions.

Your affiant states the facts which establish probable cause necessary for the issuance of a search warrant for the suspected premises and persons are as follows:

1.  On October 25, 2010, I, Sergeant Winkler, received information from a confidential informant about stolen property located at the address of 3261 Limestone County Road 460 in possession of Edward Stewart.  I traveled to the location and spoke with Stewart who gave consent to a search of his residence.  Drug paraphernalia and guns were found at the location.  One of the guns was determined to be stolen and Stewart was arrested for the violation.

2.  On August 18, 2010, Deputy Shane James was flagged down by a complainant on Limestone County Road 460.  The complainant advised that he had reported a Kawasaki Mule stolen and knew of its possible location.  On this same date, deputies from this office including myself, went to the location of 3261 Limestone County Road 460 to locate the Kawasaki Mule.  The Mule was located on the property.  Edward Stewart was later charged with its possession.

3.  On September 1, 2010, Sgt[.] Brett New returned to the property at 3261 Limestone County Road 460 to do a follow up investigation.  A trailer was recovered at the property which had the VIN plate removed and was not registered correctly and believed to be stolen.

4.  Since early in the year of 2010, Captain Agnew and I, Sergeant Winkler, along with other Deputies of the Limestone County Sheriff's Office have been receiving information from confidential informants in relation to methamphetamine sales and ongoing criminal activity at the location of 3261 Limestone County Road 460.

5. In late June 2012, I, Sergeant Winkler, received information from a confidential informant (#1) about drug activity at the location of 3261 Limestone County Road 460. The informant advised me that he had been to the location on at least 4 occasions and saw methamphetamine. The informant advised that he had purchased methamphetamine from Edward Stewart on at least 8 to 10 occasions through another individual which is common in methamphetamine trafficking. I was able to gain access to Edward Stewart's Facebook page online and did observe photos of Stewart with the subject that the informant claimed to use to buy methamphetamine from Stewart. The informant advised that the last time he had been at the location in person was in December of 2011.

6. Within the last two weeks, I, Sergeant Winkler spoke with a confidential informant (#2) in reference to activity at the location of 3261 Limestone County Road 460. The informant advised of methamphetamine trafficking at the location. The informant advised me of the location where the methamphetamine was believed to be kept. The informant advised me of multiple individuals dealing methamphetamine at the location.

7. Within the last 72 hours, I, Sergeant Winkler, spoke with a confidential informant (#3) in reference to activity at 3261 Limestone County Road 460. The informant advised that they knew Edward Stewart for a number of years and had seen methamphetamine a number of times at the location along with people using methamphetamine. The informant advised that he had seen large amounts of methamphetamine at the location on a number of occasions.

8. The Limestone County Sheriff's Office in house computer system shows the following arrests for Edward Stewart: Theft of a firearm, Theft of property greater than or equal to $1,500.00 but less than $20,000.00, possession of a controlled substance penalty group 1 less than one gram and assault causes bodily injury.

It is Affiant's experience that individuals who traffic in controlled substances are not unlike any other individuals in our society in that they maintain documents and records. These documents and records will normally be retained for long periods of time regardless of whether their value to the individual had diminished. Often this type of evidence is

generated, maintained and is subsequently forgotten about. Hence, documents that one would normally think a prudent person would destroy because of their incriminating nature are still possessed months or even years after they come into the possession of the drug trafficker. In fact, Affiant has participated in the execution of numerous search warrants where documentary evidence has been found. It is Affiant's experience that the larger and more complex a continuing criminal enterprise is, the more documentary evidence is generated during the course of commission.

Based on all the foregoing facts, Affiant believes that there exists probable cause to believe that Edward Stewart is knowingly and intentionally in possession of items described above that constitute evidence of violations of the TEXAS HEALTH AND SAFETY CODE and/or the TEXAS PENAL CODE; there further exists probable cause to believe that the items described above are being concealed at the suspected premises and on the curtilage and on the person of Edward Dean Stewart.

Affiant is aware that individuals who are involved in the distribution of Methamphetamine and/or other controlled substances fear arrest by law enforcement and these individuals are likely to destroy evidence that would assist law enforcement in the prosecution of criminal acts by these same individuals. Affiant fears that announcing would be dangerous, futile and would inhibit the effective safety and investigation of the crime involved in the purposes of this search if law enforcement officers are required to announce themselves before entering the said suspected premises. Considering statements by the CI's and Stewart's criminal history and past arrests, Affiant requests that law enforcement officers serving this search warrant be allowed to enter the said suspected premises without knocking and announcing.

WHEREFORE, Affiant asks for issuance of a Warrant that will authorize him to search said place and premises for said property and seize the same and to arrest each said described and accused person.

**Standard of Review**

A trial court's ruling on a motion to suppress is evaluated under a "bifurcated standard of review." *Cole v. State*, 490 S.W.3d 918, 922 (Tex. Crim. App. 2016).

> First, we afford almost total deference to a trial judge's determination of historical facts. The judge is the sole trier of fact and judge of witnesses' credibility and the weight to be given their testimony. When findings of fact are not entered, we view the evidence in the light most favorable to the judge's ruling and assume the judge made implicit findings of fact that support the ruling as [long as] the record supports those findings. Second, we review a judge's application of the law to the facts *de novo.* We will sustain the judge's ruling if the record reasonably supports that ruling and is correct on any theory of law applicable to the case.

*Id.* (footnoted citations omitted); s*ee also Weems v. State*, 493 S.W.3d 574, 577 (Tex. Crim. App. 2016) (footnoted citations omitted). When the trial court makes explicit fact findings, the reviewing court determines whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly v. State*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). The trial court's legal ruling is then reviewed *de novo* unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

When a defendant appeals the denial of a motion to suppress on the ground that a warrant lacked probable cause, "a reviewing court must uphold the magistrate's decision so long as the magistrate had a substantial basis for concluding that probable cause existed." *Jones v. State*, 364 S.W.3d 854, 857 (Tex. Crim. App. 2012). The reviewing court may "look only to the four corners of the supporting affidavit," and the court should "view the magistrate's decision to issue the warrant with great deference." *Id*. The supporting affidavit should be reviewed in "a commonsensical and realistic manner. . . ." *Id*. (footnoted citations omitted). "Although the reviewing court is not a 'rubber

stamp,' 'the magistrate's decision should carry the day in doubtful or marginal cases, even if the reviewing court might reach a different result upon *de novo* review.'" *Id.* (quoting *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010)).

**Discussion**

As noted, Stewart challenges the denial of his motion to suppress on the ground that the information contained in the affidavit supporting the July warrant was insufficient to establish probable cause. Specifically, Stewart argues that the information contained in the affidavit is insufficient to support probable cause to believe he was involved in methamphetamine trafficking because the information was based upon uncorroborated statements from "three untested, first-time informants of unknown reliability."

A search warrant is supported by probable cause when "the facts submitted to the magistrate are sufficient to justify a conclusion that the object of the search is probably on the premises to be searched at the time the warrant is issued." *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006). The warrant must be "read in a common sense and realistic manner," and "[r]easonable inferences may be drawn from the facts and circumstances contained within the four corners of the affidavit." *Id.* An affidavit is sufficient to establish probable cause "if, from the totality of the circumstances reflected in the affidavit, the magistrate was provided with a substantial basis for concluding that probable cause existed." *Id.* at 156. "Neither federal nor Texas law defines precisely what

degree of probability suffices to establish probable cause, but a magistrate's action cannot be a mere ratification of the bare conclusions of others." *State v. Duarte*, 389 S.W.3d 349, 354 (Tex. Crim. App. 2012). The relevant inquiry is whether "there are sufficient facts, coupled with inferences from those facts, to establish a 'fair probability' that evidence of a particular crime will likely be found at a given location." *Rodriguez v. State*, 232 S.W.3d 55, 62 (Tex. Crim. App. 2007). "The issue is not whether there are other facts that could have, or even should have, been included in the affidavit; we focus on the combined logical force of facts that *are* in the affidavit, not those that are omitted from the affidavit." *Id.* (emphasis in original); *see also Johnson v. State*, No. 10-14-00263-CR, *11, 2016 Tex. App. LEXIS 2813 (Tex. App.—Waco, March 17, 2016, no pet.) (not designated for publication).

Stewart argues that the information provided by the confidential informants should be disregarded as Winkler failed to include any indication of their reliability or credibility in the affidavit. He specifically argues that the affidavit fails to include any facts that establish the basis for CI #2's knowledge of the methamphetamine attributed to Stewart's residence. The affidavit does not indicate whether CI #2 obtained his knowledge through personal observation or whether he learned of it from others. Nor does the affidavit indicate that CI #2 or CI #3 were qualified by experience or some other means in identifying methamphetamine. Finally, Stewart argues that the information provided by CI #1 is uncorroborated and is either too remote or unspecified as to time.

In evaluating an informant's tip, we take into account the informant's veracity or reliability and his basis of knowledge to determine the value of his assertions. *Illinois v. Gates*, 462 U.S. 213, 233, 103 S.Ct. 2317, 2329, 76 L.Ed.2d 527 (1983); *Rivas v. State*, 446 S.W.3d 575, 579 (Tex. App.—Fort Worth 2014, no pet.). The unnamed informant's reliability and credibility may be established by general assertions of the affiant that the informant has proven reliable on previous occasions. *Duarte*, 389 S.W.3d at 357. "Although an informant's veracity, reliability, and basis of knowledge are highly relevant in reviewing the sufficiency of an affidavit, these elements are not each independent requirements, but closely intertwined issues that illuminate the overall question of whether there is probable cause." *Blake v. State*, 125 S.W.3d 717, 726 (Tex. App.—Houston [1st Dist.] 2003, no pet.). "[A] deficiency in one may be compensated . . . by a strong showing as to the other, or by some other indicia of reliability," all of which are relevant considerations under the totality of the circumstances. *Gates*, 462 U.S. at 233, 103 S.Ct. at 2329.

If the information in the affidavit comes from "anonymous or first-time confidential informants of unknown reliability," the information must then "be coupled with facts from which an inference may be drawn that the informant is credible or that the information is reliable." *Duarte*, 389 S.W.3d at 357. If the affidavit is based almost entirely on hearsay information supplied by a first-time confidential informant, there must be a substantial basis for crediting the hearsay that is presented. *Id*. at 355 (citing

*Gates*, 462 U.S. at 241-42).  A tip may be deemed credible if it is corroborated, if it is a statement against the confidential informant's penal interest, if it is consistent with information provided by other informants, if it includes detailed first-hand observation, or if it is coupled with an accurate prediction of the subject's future behavior.  *Id.*, at 356-57 (citations omitted).

Even if an informant's reliability or credibility is otherwise substantiated, the information provided may be stale.  The affidavit notes that although Winkler received information from CI #1 in June of 2012, the CI had last been to Stewart's property in December of 2011.  "[T]ime is a less important consideration when an affidavit recites observations that are consistent with ongoing drug activity at a defendant's residence." *Jones v. State*, 364 S.W.3d. 854, 860 (Tex. Crim. App. 2012).  If an affidavit includes an isolated incident, "it would not be unreasonable to imply that probable cause dwindles rather quickly with the passage of time.  However, where the affidavit properly recites facts indicating activity of a protracted and continuous nature, a course of conduct, the passage of time becomes less significant." *Id.* at 861 (quoting *United States v. Johnson*, 461 F.2d 285, 287 (10th Cir. 1972)).  The affidavit in this case describes an ongoing investigation and the continuous distribution of methamphetamine from Stewart's residence.  *See United States v. Greene*, 250 F.3d 471, 481 (6th Cir. 2001) (where the criminal activity occurs in a "secure operational base," the passage of time becomes less significant).

Winkler corroborated some of the information received from CI #1 in that he found a Facebook connection between Stewart and CI #1's source of methamphetamine. Additionally, CI #1's statements were against CI #1's penal interests – he admitted to purchasing methamphetamine. While Winkler did not provide separate corroboration for the statements provided by CI #2 and CI #3, the information provided by each of the CI's corroborated that given by the others. Each of the CI's identified the presence of methamphetamine at Stewart's home. Both CI #1 and CI #3 also informed Winkler that they knew Stewart and had been to his residence on a number of occasions.

While the affidavit does not specifically address the basis for CI #2's knowledge of methamphetamine, it does include information which indicates this informant had greater familiarity with the drug than the average citizen. CI #2 was familiar enough with Stewart and his methamphetamine trafficking to know where Stewart stored his methamphetamine and that multiple individuals dealt methamphetamine from the residence. Additionally, as previously noted, CI #3 had known Stewart for a number of years, during which time he had personally observed large quantities of methamphetamine at Stewart's residence on a number of occasions. CI #3 also had personally seen people using methamphetamine at the location. The activities personally observed by CI #3 could not be confused with innocent behavior. While there may be deficiencies with each CI, taking the information provided by them as a whole, combined with the totality of the background information contained in the affidavit, there was

sufficient support for the trial court's finding of probable cause.

The background information included in the affidavit, apart from the information supplied by the CI's, includes Winkler's personal interactions with Stewart, interactions between Stewart and other law enforcement personnel, and Stewart's criminal history. The majority of Stewart's criminal history relates to possession of stolen property, but he was also found in possession of drug paraphernalia. While the possession of the stolen property does not, in and of itself, provide probable cause to believe narcotics trafficking was occurring on Stewart's property, the affidavit also includes Winkler's professional observation that narcotics traffickers "commonly possess stolen property as proceeds of drug transactions." The stolen property, therefore, provides some support for the allegations of methamphetamine trafficking.

From a totality of the circumstances, the information contained in the affidavit provides sufficient probable cause to support the issuance of the warrant. We conclude that the trial court did not err in denying Stewart's motion to suppress.

We overrule Stewart's sole issue and affirm the trial court's judgments in both Cause Nos. 10-15-00116-CR and 10-15-00117-CR.


REX D. DAVIS
Justice

Before Chief Justice Gray,
        Justice Davis, and
        Justice Scoggins
        (Chief Justice Gray concurring with a note)*
Affirmed
Opinion delivered and filed May 31, 2017
Do not publish
[CRPM]

*(Chief Justice Gray concurs.  A separate opinion will not issue.  He notes:  There are three aspects of this case that bear emphasis.  First, the subject of the search warrant specifically included evidence of drug sales.  As such, the remoteness-in-time argument about the information provided by the confidential informants actually seeing drugs on the premises is a different analysis.  Probable cause to find evidence of trafficking in illegal drugs finds a firm foundation in the affidavit and the information provided by the confidential informants, though untethered to a specific time helps establish that probability.  Second, reliability of the confidential informants, while weak as to the potential presence of contraband on the premises on the date of the issuance of the search warrant, was relatively strong for the use of the location as a base of operations for the distribution of contraband and the likelihood of finding evidence of the trafficking in illegal drugs on the premises on the date of the issuance of the search warrant.  Finally, and of more importance for this concurring note, there were multiple grounds upon which the State opposed the motion to suppress and thus several grounds upon which the motion could be denied.  Only one of those grounds was challenged on appeal by Stewart.  Accordingly, I find the entire discussion and analysis of the issue raised by Stewart in this appeal to be immaterial since there were multiple other grounds that would have supported the denial of the motion to suppress that are not challenged on appeal.  Accordingly, I join the Court's affirmance of the judgments adjudicating Stewart guilty though not the basis thereof.)

