

**NUMBER 13-18-00004-CR**

**COURT OF APPEALS**

**THIRTEENTH DISTRICT OF TEXAS**

**CORPUS CHRISTI – EDINBURG**

| | |
|---|---|
| **DAVID VALENTIN RODRIGUEZ,** | **Appellant,** |
| **v.** | |
| **THE STATE OF TEXAS,** | **Appellee.** |

**On appeal from the 275th District Court
of Hidalgo County, Texas.**

# MEMORANDUM OPINION

**Before Justices Benavides, Longoria, and Hinojosa
Memorandum Opinion by Justice Longoria**

Appellant David Valentin Rodriguez entered a plea of guilty and was convicted of aggravated assault with a deadly weapon, a second-degree felony, and injury to a child, a third-degree felony. *See* TEX. PENAL CODE ANN. §§ 22.02, 22.04 (West, Westlaw through 2017 1st C.S.). By two issues, Rodriguez argues that the trial court erred by (1) denying his motion to suppress evidence, and (2) naming Mission Police Department

Officer Rey Medrano as the outcry witness. We affirm.

## I. BACKGROUND

Rodriguez was charged by indictment with aggravated assault with a deadly weapon and injury to a child. *Id.* In the indictment, the State alleged that on or about December 21, 2015, Rodriguez attacked Jocelyn Riggs in her apartment and struck her with a crowbar. The State further alleged that during the attack on Riggs, M.C.[1], a five-year-old child, attempted to intervene and was thrown to the floor by Rodriguez, causing M.C. to strike his head on the floor. The police were called to the scene after Rodriguez had fled. Riggs and M.C. were outside when the police arrived. Officer Medrano interviewed both individuals. The police performed a search of Riggs's apartment where the incident took place and discovered marijuana and drug paraphernalia in the form of a "bong" typically used to smoke marijuana.

Once the apartment was processed, Mission Police Officer Yvette Martinez applied for a search warrant to search the residence of Rodriguez. Officer Martinez's probable cause affidavit provided the location as "1224 Lindberg, Palmhurst, Hidalgo County, TX 78574," and provided a detailed description of the single-family home. The affidavit further identified the suspect as "David Valentin Rodriguez (DOB: 04-26-91)" and noted that the following items were believed to be in the premises:

> [S]hirt, pants, beanie, socks, underwear, shoes, blunt object with victims [sic] blood or any other items that may have traces of the victims [sic] blood or hair and or: property or items, except the personal writings by the accused, constituting evidence of an offense or constituting evidence tending to show that a particular person committed an offense.

The affidavit also contained the facts of the incident as alleged by the Riggs as a basis

---

[1] Pursuant to rule of appellate procedure 9.8, we will utilize the minor child's initials throughout this opinion. *See* TEX. R. APP. P. 9.8.

for probable cause. The warrant was approved by the magistrate judge. Pursuant to the warrant, police officers then searched and collected evidence from Rodriguez's residence.

## A. Pretrial Hearings

### 1. Motion to Suppress

Rodriguez filed a motion to suppress evidence claiming the warrant was fatally defective, challenging the probable cause, and arguing that the warrant was facially invalid. The trial court held a hearing on the motion to suppress.

Officer Marco Antonio Basaldua, a crime scene investigator with the Mission Police Department, testified that he processed Riggs's apartment after the incident took place. He testified that he was dispatched to process the crime scene and that he found marijuana and a "bong" used to smoke marijuana in Riggs's apartment. The drugs and drug paraphernalia were collected, pursuant to instruction by Investigator Martinez.

Rodriguez's attorney also questioned Officer Basaldua regarding the probable cause affidavit. Officer Balsadua testified that the affidavit was signed by Investigator Martinez, whom he has worked with on many occasions. After reading through the affidavit, Officer Balsadua confirmed that the affidavit contained no mention of the drugs or drug paraphernalia found in Riggs's apartment. Rodriguez's attorney also had Officer Balsadua confirm that the affidavit did not contain information regarding the reliability of Riggs to provide information to support a probable cause affidavit.

The State elicited testimony from Officer Balsadua that Officer Rey Medrano was also present at the scene of the incident as the primary officer. The probable cause affidavit also contained statements from Officer Medrano, who spoke to both individuals

3

in the case.

Rodriguez's attorney argued that the probable cause affidavit was lacking insofar as the veracity of the information of Riggs was unreliable. Further, he argued that Investigator Martinez should have included the information regarding the drugs and drug paraphernalia located in Riggs's apartment because it "in and of itself, smacks of a presumption of an unreliable witness." As to the warrant itself, Rodriguez's attorney argued that it was facially invalid because it did not properly describe the "places to be searched, as well as the things to be seized," and therefore was inadequate.

The State responded to these arguments stating that Riggs was not a confidential informant, but rather an alleged victim, and therefore the information she provided for the affidavit was reliable because it was knowledge from her personal experience. As to the warrant itself, the State responded to the defense by arguing that the trial court was to consider the warrant and the probable cause affidavit together because the warrant incorporated the specific facts contained within the affidavit, including the person and place to be searched and the items to be seized.

The trial court denied the motion to suppress.

### 2. Outcry Hearing

The trial court also held a hearing to determine the admissibility of the hearsay statement of M.C., the child in the case. *See* TEX. CRIM. PROC. CODE ANN. art. 38.072 (West, Westlaw through 2017 1st C.S.).

Officer Medrano testified that he was on patrol the evening of the incident. Officer Medrano was dispatched to the scene and arrived within five minutes of receiving the dispatch call. Upon arriving at the scene, he found Riggs and M.C. in the alleyway near

4

Riggs's apartment and stated that both Riggs and M.C. had blood on them and both were upset and scared. Officer Medrano stated that he was the first officer to arrive on the scene and the first person to interview Riggs and M.C. He indicated that he calmed both individuals down before asking them specifics about what had happened.

Officer Medrano asked M.C. questions about what he had seen and what had happened. M.C. told Officer Medrano that "David" and Riggs were arguing inside of the apartment and that David was choking Riggs. M.C. said that he tried to stop David and he was pushed to the floor and hit his head. M.C. also told Officer Medrano that he saw David hit Riggs with a "black bar."

M.C.'s mother, Geneva Riggs, testified that her son was available to testify should the need arise. Her testimony was that after she got out of work and stopped for food, she went home to the apartment. When she arrived at the apartment, the door was locked so she went around the back to find the gate and back sliding door open and a mess in the apartment. Geneva said she then heard her son call for her from the alleyway. She said she arrived before Officer Medrano, but that he was the first officer on the scene. She also testified that her son told her what had happened before he told anyone else.

After the testimony of both witnesses, the State requested that the trial court allow the hearsay statements of M.C. to come in through Officer Medrano as an outcry witness. The defense argued that the witnesses contradicted each other, each claiming to be the first person over the age of eighteen that M.C. relayed the events to. The defense stated that the State did not meet their burden to prove that Officer Medrano was the first person over the age of eighteen to speak with M.C. about what happened, and that the trial court should deny the State's motion to elicit the hearsay testimony at trial.

5

In response, the State asked the trial court to determine that Officer Medrano's testimony was reliable based on his training and experience as a police officer to recall and report events that occurred in the past, arguing that Geneva's recollection may have been inaccurate as a witness.

As the trier of fact, the trial court held that, based on his testimony, Officer Medrano was the first person over the age of eighteen to speak with M.C. and therefore the hearsay statements would be admissible through him.

**B.    Plea**

After reserving his right to appeal the trial court's ruling regarding his motion to suppress and the outcry witness determination, Rodriguez pleaded guilty to counts one and two of the indictment and was sentenced to the Texas Department of Criminal Justice–Institutional Division for fourteen years and five years, respectively.

This appeal followed.

## II.    MOTION TO SUPPRESS

By his first issue, Rodriguez argues that the search warrant was insufficient to establish probable cause and the affidavit in support of the search warrant was facially invalid.

**A.    Standard of Review**

An appellate court normally reviews a trial court's ruling on a motion to suppress by using a bifurcated standard of review, giving almost total deference to the historical facts found by the trial court and reviewing de novo the trial court's application of the law. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). However, when assessing the sufficiency of an affidavit for a search warrant, the reviewing court is limited to the four

6

corners of the affidavit. *Hankins v. State*, 132 S.W.3d 380, 388 (Tex. Crim. App. 2004). Accordingly, when we review the magistrate's decision to issue a warrant, we apply a highly deferential standard because of the constitutional preference for searches to be conducted pursuant to a warrant as opposed to a warrantless search. *Swearingen v. State*, 143 S.W.3d 808, 810–11 (Tex. Crim. App. 2004) (citing *Illinois v. Gates*, 462 U.S. 213, 234–37 (1983)). We must interpret the affidavit in a common sense and realistic manner, recognizing that the magistrate was permitted to draw reasonable inferences. *Davis v. State*, 202 S.W.3d 149, 154 (Tex. Crim. App. 2006).

**B.    Applicable Law and Discussion**

Probable cause exists when the totality of the facts and circumstances presented to the magistrate support the conclusion that there is a fair probability or substantial chance that contraband or evidence of a crime will be found at the specified location. *Flores v. State*, 319 S.W.3d 697, 702 (Tex. Crim. App. 2010). Our duty is not to act as a rubber stamp for the magistrate or the trial court, however, the decision of the magistrate should carry the day in a doubtful or marginal case, even when the reviewing court might reach a different conclusion in a de novo review. *Id*.

A search warrant shall be sufficient under article 18.04 of the code of criminal procedure if it contains the following requisites:

1.    that it run in the name of "The State of Texas";

2.    that it identify, as near as may be, that which is to be seized and name or describe, as near as may be, the person, place, or thing to be searched;

3.    that it command any peace officer of the proper county to search forthwith the person, place, or thing named;

4.    that it be dated and signed by the magistrate; and

7

> 5. that the magistrate's name appear in clearly legible handwriting or in typewritten form with the magistrate's signature

TEX. CODE CRIM. PROC. ANN. art. 18.04 (West, Westlaw through 2017 1st C.S.).

Rodriguez argues that the search warrant did not establish probable cause because the reliability of Riggs was not contained within in the supporting affidavit. Rodriguez relies upon several cases establishing the need for an affidavit to show an informant is credible and reliable. *See e.g., Jones v. State*, 364 S.W.3d 854, (Tex. Crim. App. 2012); *Angulo v. State*, 727 S.W.2d 276, 279–280 (Tex. Crim. App. 1987); *Elardo v. State*, 163 S.W.3d 760, 766 (Tex. App.—Texarkana 2005, pet. ref'd); *Mejia v. State*, 761 S.W.2d 35, 38 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd).

However, the State argues that Riggs is not a confidential informant, but rather she is a named informant and the State contends that Riggs's status as a named informant deems her worthy of belief; we agree. *See Wilkerson v. State*, 726 S.W. 542, 545 (Tex. Crim. App. 1996) (stating "[w]hen the affidavit contains information given by a named informant, this Court has held that the affidavit is sufficient if the information given is sufficiently detailed so as to suggest direct knowledge on his or her part"). Here, Riggs was an alleged victim in the case and gave the officer's a detailed description of the incident which was contained within the probable cause affidavit. Riggs's first-hand, direct knowledge is sufficient to justify the issuance of the search warrant. *Id.*

Rodriguez also argues that the warrant should be found to be facially invalid because Investigator Martinez did not include in the affidavit information that drugs and drug paraphernalia were found at Riggs's apartment where the incident occurred or that Riggs was a reliable witness. Under *Franks v. Delaware*, a defendant bears the burden

8

of showing by a preponderance of the evidence at a suppression hearing that a probable cause affidavit submitted in support of a warrant contains a false statement made either knowingly and intentionally or with reckless disregard for the truth. 438 U.S. 154, 156 (1978).

We have already concluded that Riggs's direct knowledge as a named informant, even without a statement regarding her credibility in the affidavit, is sufficient. However, Rodriguez contends that Investigator Martinez neglected to include the information relating to the drugs and drug paraphernalia, which he argues goes directly to Riggs's credibility. He argues that Investigator Martinez did not include this information and thus, the magistrate was unable to consider the unreliability of Riggs when signing off on the search warrant. Rodriguez, however, provides no support for his contention that the drugs and drug paraphernalia found in Riggs's apartment somehow diminish her credibility to relay the details of the incident that occurred. *See id*. at 171 (stating "the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine"); *see also* TEX. R. APP. P. R. 38.1(i).

Accordingly, Rodriguez's first issue is overruled.

### III.    OUTCRY HEARING

By his second issue, Rodriguez argues that the trial court erred in overruling his objection to the outcry testimony of Officer Medrano.

### A.    Standard of Review

The trial court has broad discretion to determine which of several witnesses is an outcry witness, and we will not disturb its decision absent a clear abuse of discretion. *See Garcia v. State*, 792 S.W.2d 88, 92 (Tex. Crim. App. 1990); *Hayden v. State*, 928 S.W.2d

9

229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).  Moreover, the trial court is afforded broad discretion to determine whether the complainant's statement falls within the article 38.072 hearsay exception.  *Garcia,* 792 S.W.2d at 92.  An abuse of discretion will not be found unless the trial court's decision is outside the zone of reasonable disagreement.  *See Weatherred v. State*, 15 S.W.3d 540, 542 (Tex. Crim. App. 2000); *Tear v. State*, 74 S.W.3d 555, 558 (Tex. App.—Dallas 2002, pet. ref'd).

## B.     Applicable Law and Discussion

Article 38.072 provides that outcry testimony from the first adult to whom the child made statements describing, in some discernable manner, the alleged offense will not be inadmissible because of the hearsay rule if certain requisites are met.  *See* TEX. CODE CRIM. PROC. ANN. art 38.072.  Rodriguez argues that Officer Medrano should not have been deemed the proper outcry witness because the child's mother also testified that she was the first adult to whom her son spoke to about the alleged incident.

In the present case, the record fails to show the extent of the child's conversation with his mother.  Although the mother says she was the first person the child told about the incident, there is no evidence that the child described to her the details of the alleged assault.  *See Garcia,* 792 S.W.2d at 91 (stating that where the record is void of specific details of statements made by the complainant to an individual, such individual cannot be an outcry witness under article 38.072); *Dorado v. State,* 824 S.W.2d 794, 795 (Tex. App.—El Paso 1992), *vacated on other grounds*, 843 S.W.2d 37 (Tex. Crim. App. 1992) (holding that the trial court did not abuse its discretion in designating the outcry witness where the record failed to show that the complainant detailed the alleged offense to another person who appellant claimed was the "outcry" witness); *Garibay v. State,* 787

S.W.2d 128, 130 (Tex. App.—Corpus Christi 1990, pet. ref'd) (finding that the trial court did not abuse its discretion in designating the outcry witness). Accordingly, we find the trial court did not abuse its discretion by allowing Officer Medrano to testify as an outcry witness under article 38.072. *See Hayden v. State*, 928 S.W.2d 229, 231 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd).

Rodriguez's second issue is overruled.

## IV. CONCLUSION

The judgment of the trial court is affirmed.

NORA L. LONGORIA
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
7th day of March, 2019.